## Richmond

### Richard Carter Reese

#### v.

### Commonwealth of Virginia

April 18, 1980.

Record No. 791367.

Present: All the Justices.

*Edwin A. Williams (Kellogg, Williams & Lyons,* on brief), for appellant.

*Alexander E. Conlyn, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

Under a six-count indictment charging two counts each of robbery, abduction, and use of a firearm in the commission of robbery, Richard C. Reese was convicted by a jury and, by judgment entered June 15, 1979, sentenced to confinement in the penitentiary for a total term of 32 years with six years suspended. The issue on appeal is whether defendant's inculpatory statements were inadmissible as the product of an unlawful search of his automobile and seizure of stolen property discovered in that search.

On July 22, 1978 at approximately 5:45 a.m., State Trooper K. B. Williams stopped a car for speeding. Three people were in the car. Williams charged Reese, the driver, with several traffic offenses, including that of driving while his operator's license was suspended. Unable to post bond, Reese was incarcerated in the Culpeper County jail. Pursuant to Code § 46.1-351.1, Williams impounded the car in a nearby wrecker yard.

Just before noon that day, Williams learned that a person matching Reese's description had participated in a robbery at a motel in Fauquier County shortly before Reese's arrest. W. H. Wayland, a Culpeper County investigator, asked Williams if he had inventoried Reese's car. According to Williams' testimony, he and Wayland then "went up to the vehicle to see if there was any readily visible signs that possibly could be tied in with the Fauquier robbery." The wrecker yard was guarded by dogs, and the doors of Reese's car were locked. Using the keys acquired from the yard's attendant, Wayland entered the car and searched the front seat area where he discovered several cameras, "a blank gun loaded with live .22 rounds", and some "loose money". At a pretrial suppression hearing, Wayland testified that this search was conducted pursuant to departmental policy memorialized in posted notices which required "all personnel to inventory cars when they are seized or confiscated."

Making no list of the articles he found, Wayland seized them and returned with Williams to Culpeper. There, Williams entered the room with Reese, read him the warnings required by *Miranda* v. *Arizona*, 384 U.S. 436 (1966), and questioned him about the two passengers in his car. Reese said that they were hitchhikers. When Williams inquired about the articles found in his car Reese explained that his passengers must have had them when he picked them up. Wayland and two Fauquier County deputy sheriffs then entered the room. Confronting Reese with the items stolen in the robbery, Wayland told him that "the evidence was there to show that he was directly involved". Reese then confessed to the crime.

About 4:00 o'clock that afternoon, Wayland and Williams returned to Reese's car. Using a tape recorder, Wayland identified every article located in the car. The five-page list compiled from the recording included a number of articles found in the trunk.

About an hour later, James Riddel, a Fairfax County officer investigating a series of motel robberies in that county, learned of Reese's arrest. The next day, he and Investigator Roger Reed went to Culpeper to talk with Wayland. He told them about Reese's con-

fession, and Riddel recognized some of the items on Wayland's list as property stolen in a Fairfax County robbery.

The two Fairfax investigators decided to interview Reese. Riddel informed Reese that he was "investigating a robbery that occurred at the Chilla Villa Motel in Fairfax County" and that he "considered [Reese] a suspect in this case". Reese was read the *Miranda* warnings, and he signed a waiver form. After Riddel told Reese that the goods stolen in the Fairfax robbery had been found in his car, Reese admitted that "he was involved in it", supplied the names of his accomplices, and named the property that had been stolen. As Reese conceded during oral argument, none of the products from the Fairfax robbery was seized in the initial search of defendant's car. And, during questioning by the Fairfax investigators, Reese was not confronted with any articles seized in that search.

The several crimes of which Reese stands convicted were committed during the course of the Fairfax County robbery. Before trial, Reese moved to suppress (1) all physical evidence taken from his car and (2) evidence of his inculpatory statements. Claiming that *the* search and seizure violated the Fourth Amendment, Reese maintained that his statements were products of this illegality. He also asserted that his admissions had been coerced and had been elicited in violation of his *Miranda* rights. In addition to rejecting the defendant's Fifth Amendment claims, the trial court ruled that *the* search was an inventory permissible under the Fourth Amendment as construed in *South Dakota* v. *Opperman,* 428 U.S. 364 (1976). At trial, the Commonwealth did not introduce any of the articles seized from Reese's car, but testimony detailing Reese's inculpatory statements was admitted over his objection.

Reese now argues that *the* search and seizure were not justified by any of the recognized exceptions to the Fourth Amendment's warrant requirement, that his inculpatory statements were the product of unlawful police conduct, and that the trial court erred in overruling his motion to exclude the statements as "fruit of the poisonous tree". *Wong Sun* v. *United States,* 371 U.S. 471, 488 (1963). Relying upon the "inventory exception" to the warrant requirement, the Attorney General contends that the tree was not poisonous and, consequently, the fruit was not tainted.

■ Our analysis begins with the proposition that, although defendant's Fifth Amendment rights were respected, incriminating statements obtained as a result of a violation of his Fourth Amendment rights are, absent sufficient attenuation, inadmissible. *Dunaway*

v. *New York,* 442 U.S. 200 (1979); *Brown* v. *Illinois,* 422 U.S. 590 (1975). Accordingly, our inquiry is two-fold. Were defendant's Fourth Amendment rights violated? If so, was his confession obtained by exploitation of that illegality?

██ Reese does not deny that his car was lawfully seized and impounded. Generally, such a car may be searched, as a matter of standard procedure, without a warrant in order to inventory its contents. *South Dakota* v. *Opperman, supra.* This exception to the Fourth Amendment's warrant requirement is based upon the need to protect the owner's property, to protect the police against claims of lost or stolen property, *Cabbler* v. *Commonwealth,* 212 Va. 520, 184 S.E.2d 781 (1971), *cert. denied,* 405 U.S. 1073 (1972), to protect the police from physical danger, and to protect the public from dangerous instrumentalities or substances that may be pilfered from an impounded vehicle. *Opperman,* 428 U.S. at 369, 376 n. 10. Because inventories promote such important interests and, not being investigatory in purpose, do not implicate "the interests which are protected when searches are conditioned on warrants", *Opperman,* 428 U.S. at 382-83 (Powell, J., concurring), inventory searches are not "unreasonable" within the meaning of the Fourth Amendment. Contraband or other evidence of crime discovered in an inventory search may be seized without warrant and introduced into evidence at trial. *See, e.g., Harris* v. *United States,* 390 U.S. 234 (1968). But, as Reese points out, the inventory exception does not apply when the inventory is merely "a pretext concealing an investigatory police motive." *See Opperman,* 428 U.S. at 376.

██ In our view, this case involves two distinct searches. The first occurred on the morning of July 22 when Williams and Wayland "went up to the vehicle to see if there was any readily visible signs that possibly could be tied in with the Fauquier robbery." Without preparing a list of the contents of the car, the officers simply seized what they were seeking. Manifestly, the motive prompting the search was to investigate and prosecute and not to take inventory. We are of opinion that the inventory exception does not apply to the morning search, that seizure of the physical evidence discovered in that search was unlawful, and that Reese's confession to the Fauquier robbery was tainted thereby.

Yet, we also believe that the vice of the morning search and seizure did not infect the search conducted that afternoon. We look again to the motive prompting the search and the manner in which it was conducted. At that time, adequate evidence of the Fauquier

robbery had already been seized, and, since Reese had confessed his involvement, there was no need to search for additional physical evidence of that crime. Nor were the officers seeking evidence of the Fairfax robbery, for they did not learn until later that Reese was a suspect. Conducting the search in accord with standard police procedures, the officers prepared a detailed list of every item they discovered. We conclude that the afternoon search was a good-faith inventory, initiated and conducted for the benign purposes underlying the exception to the warrant requirement.

 Having determined that the morning search violated the Fourth Amendment, we turn to the second inquiry in our analysis and consider whether that search tainted Reese's confession to the Fairfax robbery. Approaching this question, we bear in mind not only that two searches were conducted but also that evidence of two different criminal escapades was discovered in defendant's car. Reese contends that there was an unbroken causal chain linking the morning search, the Fauquier confession, the afternoon search, and the Fairfax confession. We disagree. We believe the chain was broken by "intervening circumstances".* *Brown* v. *Illinois, supra,* 422 U.S. at 603-04.

Defendant made the statements in question when he was informed that the fruits of the Fairfax robbery had been found in his automobile. He acknowledges that these articles were discovered in the afternoon search alone. The legal afternoon search and the interrogation which followed were circumstances causally unrelated to the events of the morning. Unlike the motive prompting the morning search, the purpose of the afternoon search was not investigatory. Nothing seized in the unlawful search was used to induce Reese's confession to the Fairfax offenses. And there is no evidence that the Fairfax investigators, who played no part in the prior interrogation, mentioned or alluded to the Fauquier robbery or defendant's confession to that crime when they interviewed him. Riddel and Reed

---

* The Attorney General suggests that, assuming the morning search was unlawful, the *Miranda* warnings were sufficient *per se* to break the causal chain and purge the taint. Contrary to the Attorney General's statement on brief, we did not adopt such a rule in *Warlick* v. *Commonwealth,* 215 Va. 263, 208 S.E.2d 746 (1974). In fact, noting a split of authority, we expressly reserved the question. 215 Va. at 266-67, 208 S.E.2d at 748-49. The question has since been put to rest. Rejecting such a *per se* rule, the Supreme Court of the United States held in *Brown* that *Miranda* warnings, a factor relevant to a determination of Fifth Amendment voluntariness, are "not the only factor to be considered" in a Fourth Amendment determination whether a confession bears the taint of an unlawful seizure. 422 U.S. at 603. Reese's waiver of his *Miranda* rights is only an incidental factor underpinning our holding here.

did not exploit any direct or indirect product of the illegal search. Thus, no "causal connection", *Brown,* 422 U.S. at 603, much less a "close causal connection", *Dunaway,* 442 U.S. at 218, existed between the Fourth Amendment violation and Reese's confession to the Fairfax crimes. The causal chain was broken; all that remained was the link between the lawful inventory and the Fairfax confession. We hold that the confession was not tainted and was, therefore, properly admitted into evidence.

*Affirmed.*