Norfolk
# NEIL ANTHONY WATSON
v.
# COMMONWEALTH OF VIRGINIA
No. 0470-93-1
Decided February 14, 1995

COUNSEL

Ross Alan Weinstein (Ashe & Weinstein, on brief), for appellant.

Margaret Ann B. Walker, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, J.**—Neil Anthony Watson (Watson) appeals his convictions for possession of cocaine with the intent to distribute and possession of a firearm while in possession of cocaine. Watson asserts that the trial court erred in failing to suppress as the product of an unlawful seizure inculpatory statements he made to police. We agree and reverse Watson's convictions.

On June 6, 1992, police executed a valid search warrant at an apartment in Virginia Beach.[1] Upon entry into the apartment, a supervising officer alerted other officers in the area to be on the lookout for "a black Dodge Shadow" driven by "a black male." Neither Watson, an African-American, nor his vehicle, a black Dodge Shadow, was named in the search warrant.

A surveillance team observed a black Dodge Shadow pull into a nearby commercial parking lot. The officers stopped the vehicle and detained Watson, the driver and sole occupant of the vehicle. The officers informed Watson that he was a suspect in a drug investigation. Watson exited the vehicle at the officers' request and was immediately handcuffed. When the surveillance team contacted the supervising officer and informed him that they had detained Watson, they were instructed to release him but did not do so at that time.

Shortly after the officers were directed to release Watson, a police sergeant arrived and instructed the officers to remove Watson's handcuffs. The sergeant then asked Watson to drive to the apartment to "clear up the matter." Watson drove his vehicle to the apartment. The police drove directly in front and behind Watson in their vehicles. When Watson arrived at the apartment, he was *immediately arrested* and given *Miranda* warnings.[2] While still at the apartment, Watson made incriminating statements concerning his knowledge and control of the cocaine and

---

[1] The record does not establish who the named lessees of the apartment were.

[2] Watson entered the apartment at the direction of officers outside and was placed under arrest by officers inside who were conducting the search. *See infra* discussion of probable cause for arrest.

weapon found there. He was then transported to the city jail where he was again given *Miranda* warnings and reiterated his prior statements.

In a suppression hearing, the trial court ruled that while the initial seizure of Watson was illegal, his act of voluntarily returning to the apartment in his own vehicle constituted a cessation of custody and erased any taint caused by the illegal seizure. The trial court further noted that Watson's statements were given voluntarily after he was given *Miranda* warnings. On this basis, the trial court permitted the introduction of Watson's statements at trial.

We agree with the trial court that the officers lacked reasonable suspicion to detain Watson in the commercial parking lot. This parking lot was totally unrelated to and some distance from the apartment. Watson was not identified in the search warrant as an occupant of the apartment and the officers had no knowledge of the discovery of cocaine at the time Watson was first detained. Watson's activities provided no indicia of criminal behavior sufficient to warrant his being detained. *See Woodson v. Commonwealth*, 14 Va. App. 787, 793, 421 S.E.2d 1, 4 (1992), *aff'd*, 245 Va. 401, 429 S.E.2d 27 (1993). Accordingly, when Watson was detained and handcuffed by the surveillance team he was illegally seized within the meaning of the Fourth Amendment and any evidence derived as a result of that seizure was subject to suppression under the exclusionary rule. *See Hart v. Commonwealth*, 221 Va. 283, 287, 269 S.E.2d 806, 809 (1980); *Walls v. Commonwealth*, 2 Va. App. 639, 651, 347 S.E.2d 175, 182 (1986).

"The exclusionary rule operates not only against evidence seized and information acquired during an unlawful search or seizure but also against derivative evidence discovered because of the unlawful act." *Warlick v. Commonwealth*, 215 Va. 263, 265, 208 S.E.2d 746, 748 (1974). Nonetheless, evidence obtained following an illegal seizure may be admissible "where the connection has become so attenuated as to dissipate the taint." *Id.* at 266, 208 S.E.2d at 748; *see also Commonwealth v. Ealy*, 12 Va. App. 744, 755, 407 S.E.2d 681, 688 (1991). For purposes of the Fourth Amendment, a person has been seized "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see also Florida v.*

*Royer*, 460 U.S. 491, 502 (1983). Accordingly, we must determine whether, when the police sergeant directed the officers to remove Watson's handcuffs and then requested that Watson accompany him to the apartment, the circumstances surrounding the seizure had sufficiently abated to suggest to a reasonable person that he was free to leave.

■ Although the *Mendenhall* test "is necessarily imprecise" and "flexible enough to be applied to the whole range of police conduct in an equally broad range of settings, it calls for consistent application from one police encounter to the next, regardless of the particular individual's response to the action of the police." *Michigan v. Chesternut*, 486 U.S. 567, 573-74 (1988). *See generally Baldwin v. Commonwealth*, 243 Va. 191, 196-98, 413 S.E.2d 645, 648-49 (1992) (discussing the distinction between subjective response to a police request and objective belief of freedom to leave). Whether a person who encounters a police officer believes he or she is free to leave must be measured under all the circumstances by an "objective standard—looking to the reasonable man's interpretation of the conduct in question." *Chesternut*, 486 U.S. at 574. Although this process involves factual determinations, the ultimate question of whether the evidence is sufficient to support a finding that a seizure has abated or continues is one of law. Accordingly, while we grant deference to the trial court's factual determinations and accord great weight to its resolution of the legal issue, we must conduct an independent review of the ultimate issue. *Cf. Wilson v. Commonwealth*, 13 Va. App. 549, 551, 413 S.E.2d 655, 656 (1992) (addressing standard of appellate review for determining voluntariness of confession).

■ We hold that under the circumstances of this case a reasonably prudent person would not have believed he or she was free to leave. Once a person's freedom of movement is restricted through a seizure under color of law, the degree of police conduct necessary to maintain the seizure is less than was required to initiate it. Thus, a request that a detainee accompany a police officer to "clear up the matter," would import to a reasonably prudent person that "the matter" (i.e. the reason for his having been seized) was not concluded and that the custody was continuing. Even when, as in this case, a physical restraint of freedom is removed, the mere presence of police, insufficient in itself to create a seizure, is sufficient to continue a seizure absent some affirmative

act which explicitly informs the detainee that he or she is free to leave.

The Commonwealth places great emphasis on the fact that Watson was allowed to drive to the apartment without police being physically present in his vehicle. The record shows, however, that Watson was permitted to do this only after acquiescing to the sergeant's request that Watson go to the apartment. Moreover, the officers drove directly in front and behind Watson in their vehicles. Under these circumstances, a reasonably prudent person would not believe he or she could drive away without initiating a police pursuit and recapture. Accordingly, the trial court erred when it ruled that the illegal seizure ended before Watson arrived at the apartment.

The Commonwealth further asserts, relying on *Reese v. Commonwealth*, 220 Va. 1035, 1040, 265 S.E.2d 746, 750 (1980), that Watson's arrest at the apartment is an intervening circumstance breaking the chain of taint. In *Reese*, the Virginia Supreme Court held that a subsequent legal search of a vehicle cured the taint of a prior illegal search. We recognize that up to the point of his arrest no evidence had been gathered which was subject to suppression and that Watson was not himself a suppressible fruit of the illegal seizure. Thus, if the arrest at the apartment was lawful, this would potentially cure the taint of the prior illegal seizure.

It is well settled that a police officer has the legal right to arrest an accused without a warrant, where the officer has "reasonable cause to believe [the accused has] committed a felony." *Hammer v. Commonwealth*, 207 Va. 135, 145, 148 S.E.2d 878, 884 (1966). However, when an arrest is challenged on constitutional grounds, the Commonwealth has the burden to prove the arrest was based on probable cause. *See Thompson v. Commonwealth*, 10 Va. App. 117, 121, 390 S.E.2d 198, 200 (1990) (noting differing standards for constitutional and statutory violations).

We hold that the record here does not support a finding that Watson's arrest at the apartment was supported by probable cause. Rather, it appears that the detectives at the apartment placed Watson under arrest on the presumption that he was being brought to them as a lawfully detained suspect. Up to the point of his arrest, however, the record does not show that the officers had

established a link between Watson and the apartment or the drugs found therein.

The police sergeant testified that he asked Watson to go to the apartment because he "believed" Watson was the occupant of the apartment being searched. However, the record does not show that he communicated this fact to the officers at the apartment. Moreover, the testimony of the officer who took Watson into custody at the apartment and read him his *Miranda* rights does not establish that the officer knew or had reason to know that Watson was the occupant of the apartment. Rather, the officer testified that he read Watson his rights and then asked if Watson was staying in the apartment and in the room where the drugs were found. Accordingly, we hold that Watson's arrest at the apartment merely continued, rather than cured, the illegal seizure begun in the parking lot and thus cannot cure the taint of the initial illegality.[3]

The Commonwealth further asserts that because Watson was given *Miranda* warnings and did not contest his understanding of his right to remain silent, deference is owed to the trial court's reliance on these factors in determining that the chain of causation from the illegal seizure had been broken. We disagree.

The United States Supreme Court has expressly rejected a *per se* rule that *Miranda* warnings dissipate the taint of an illegal seizure. *Brown v. Illinois*, 422 U.S. 590, 603 (1975); *accord Reese*, 220 Va. at 1040 n.*, 265 S.E.2d at 749 n.*. While we agree that the giving of *Miranda* warnings is a factor which the trial and appellate courts should consider, *Brown*, 422 U.S. at 603, we must consider the totality of the circumstances surrounding the violation of the suspect's rights. Moreover, the trial court's emphasis on the giving of *Miranda* warnings occurred in conjunction with its erroneous ruling that Watson's illegal seizure terminated in the parking lot.

Finally, we address the possibility that Watson's statements at the city jail are not tainted by the illegal seizure. This Court

---

[3] We further distinguish *Reese* on the ground that the second search produced evidence of a crime unrelated to the evidence obtained through the first illegal search and confession. Moreover, the second search and confession occurred five to six hours later and the interrogation which produced the second confession was conducted by officers from a different jurisdiction who played no part in the initial search and interrogation.

has recognized that evidence which is "directly linked to the primary taint of the illegal seizure" is not admissible against the person illegally seized. *Deer v. Commonwealth*, 17 Va. App. 730, 737, 441 S.E.2d 33, 38 (1994). When Watson was first seized in the parking lot and later arrested at the apartment, he was illegally seized. He then made incriminating statements which, by virtue of the illegal seizure, must be suppressed. His subsequent reiteration of those statements at the jail occurred as a direct result of the illegal seizure and the inadmissible evidence obtained as a result of that seizure. Those statements are the proverbial "fruit of the poisonous tree." Watson's illegal seizure and all the evidence that was obtained as a result "flowed one from the other with no discernable break in the chain of causation." *Id.*

■ For these reasons, we hold that the trial court erred in not suppressing all of Watson's statements as the fruits of an illegal seizure. Finally, we consider whether the trial court's error prejudiced the result of Watson's trial. *See Ferguson v. Commonwealth*, 240 Va. ix, 396 S.E.2d 675 (1990) (order). "Constitutional error . . . is harmless only when the reviewing court is 'able to declare a belief that it was harmless beyond a reasonable doubt.' " *Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). We cannot say that the influence of a defendant's inculpatory statements upon the jury is harmless beyond a reasonable doubt where those statements constitute the principal evidence establishing his knowledge and control of contraband. While the Commonwealth might have proved Watson's possession by other evidence, its burden was greatly lessened by the use of the statements. Accordingly, we cannot say that the admission of those statements was harmless error.

For these reasons, we reverse Watson's convictions and remand to the trial court for further proceedings if the Commonwealth be so advised.

*Reversed and remanded.*

Baker, J., and Bray, J., concurred.