COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Willis and Bumgardner
Argued at Richmond, Virginia


DARRYL LEON HALL

MEMORANDUM OPINION* BY
v.    Record No. 2293-00-1        JUDGE JERE M. H. WILLIS, JR.
                                  JULY 31, 2001
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    A. Joseph Canada, Judge

            Ben Pavek (Office of the Public Defender, on
            brief), for appellant.

            Eugene Murphy, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


    On appeal from his bench trial conviction for possession of

cocaine, in violation of Code § 18.2-250, Darryl Leon Hall

contends that the trial court erred in denying his motion to

suppress evidence obtained in violation of his Fourth Amendment

rights.  For the following reasons, we affirm.

## I.  BACKGROUND

    On February 17, 2000, Virginia Beach Police Officers S.J.

Conklin and D.A. Keisel were conducting surveillance of 3244

Peele Court in response to several reports of drug activity

there.  The police had previously served a search warrant on the

---

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

residence and had recovered cocaine.  Officer Conklin testified that he was familiar with the neighborhood, which he characterized as an "open-air drug market" with "lot[s] of firearms violations," an area where numerous "shots fired" had been reported and numerous "drug arrests" had occurred.

At approximately 3:00 p.m., the officers observed Hall approach the residence and knock on the front door.  The woman who lived there "came to the door, looked to the right, looked to the left, saw [the police], [and] shut the door."  Hall went to the backyard where he could not be observed because of a "privacy fence."  The officers exited their vehicle and "walked up the alley towards the house, . . . looked through the fence, [saw] nobody in the back yard [sic] and [noticed that] the drapes were drawn."  After approximately fifteen to twenty minutes, Hall exited the rear of the house.

As Hall approached the officers, Officer Conklin said, "Excuse me.  Can we talk to you for a minute?"  Hall then "initiated conversation" with the officers, and Officer Conklin asked him "if he knew he was coming from a known drug house." Hall replied that he did not.

Officer Conklin then asked whether he could see some identification and Hall responded, "Yes.  I'll give you everything I have."  He then pulled out a lighter and his wallet, removed his ID from his wallet and gave it to Officer Conklin who "ran a local check" from his shoulder radio.

-

After Hall gave Officer Conklin his identification, the woman the officers had seen at the front door exited the house, approached the group and began arguing with Hall about money. As she approached, Officer Conklin "advised [Hall] that he was going to pat him down for narcotics and weapons." Officer Conklin testified that, as Hall emptied his pockets, he noticed a paper towel sticking out of the only pocket Hall failed to empty, and this made him "suspicious."

Officer Conklin testified that during previous arrests, he had recovered "crack stems or cocaine smoking devices wrapped in towels." He stated that "in [his] experience they normally take paper towels and wet it or wad it up around a smoking device so they don't burn their finger when they're smoking it." Officer Conklin further stated that he decided to pat Hall down within "[a] few seconds . . . [t]en seconds maybe" after Hall handed him his identification.

In denying the motion to suppress, the trial court concluded:

> When the officer asked [Hall] for ID it was
> still consentual [sic] because [Hall] not
> only offered him his ID, he was cooperative.
> He said, I'll give you everything I have.
>
> *       *       *       *       *       *       *
>
> The testimony was that after the officer had
> [Hall's] ID, then the woman interjected
> herself or at some point became part of
> this. It was totally consentual [sic] when
> he asked him for the ID, and then while he
> was looking at the ID, checking on the

-

warrants, he was apparently still pushing around in his pocket and pulling out things; and he was checking his radio to determine whether there were any warrants. The court feels . . . that during that procedure, he spotted the tissue or paper towel, whatever it is; and based on that, it's reasonable suspicion and he searched him.

Hall pled not guilty, but stipulated to the Commonwealth's evidence. He was convicted of possession of cocaine.

## II. ANALYSIS

Hall contends that he was unlawfully "seized" when Officer Conklin asked for and took possession of his identification. Therefore, he argues, all evidence obtained thereafter was the fruit of an unlawful seizure and should have been suppressed.

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon the defendant to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017 (1980)). "Ultimate questions of reasonable suspicion and probable cause to make a warrantless search" involve issues of both law and fact, reviewable de novo on appeal. Ornelas v. United States, 517 U.S. 690, 699 (1996). Similarly, whether a police-citizen encounter constitutes a seizure, thereby implicating the Fourth Amendment, presents a mixed question of law and fact, requiring

-

independent appellate review.  See Watson v. Commonwealth, 19

Va. App. 659, 663, 454 S.E.2d 358, 361 (1995).  "[I]n performing

such analysis, we are bound by the trial court's findings of

historical fact unless 'plainly wrong' or without evidence to

support them and we give due weight to the inferences drawn from

those facts by resident judges and local law enforcement

officers."  McGee, 25 Va. App. at 198, 487 S.E.2d at 261.

Officer Conklin did not effect a seizure when he requested

Hall's identification in order to conduct a "check" for

outstanding warrants.  "[A] person has been 'seized' within the

meaning of the Fourth Amendment only if, in view of all of the

circumstances surrounding the incident, a reasonable person

would have believed that he was not free to leave."  United

States v. Mendenhall, 446 U.S. 544, 554 (1980).  See Baldwin v.

Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 647-48 (1992).

"Thus, a seizure occurs when a law enforcement officer, by

physical force or some display of authority, restrains in some

manner a citizen's freedom of movement.  Only when such

restraint is imposed is there a basis for invoking Fourth

Amendment safeguards."  McCain v. Commonwealth, 261 Va. 483,

490-91, 545 S.E.2d 541, 546 (2001) (citations omitted).

> Examples of circumstances that might
> indicate a seizure, even where the person
> did not attempt to leave, would be the
> threatening presence of several officers,
> the display of a weapon by an officer, some
> physical touching of the person of the
> citizen, or the use of language or tone of

-

> voice indicating that compliance with the
> officer's request might be compelled.

Mendenhall, 446 U.S. at 554 (citation omitted). "In contrast, a

police request made in a public place for a person to produce

some identification, by itself, generally does not constitute a

Fourth Amendment seizure." McCain, 261 Va. at 491, 545 S.E.2d

at 546 (citations omitted).

Officer Conklin requested Hall's identification without any

show of force or display of authority that would have led a

reasonable person to believe that he was not free to leave.

Hall chose to remain and to answer the officers' questions. He

voluntarily gave his identification to Officer Conklin. Nothing

in the record suggests that the officers threatened,

intimidated, restrained, or coerced Hall. Officer Conklin

retained Hall's identification for "[a] few seconds . . . [t]en

seconds maybe," during which time Hall could have requested its

return or simply walked away. He did neither. Officer

Conklin's mere request for Hall's identification and his brief

use of that identification for a "check" did not effect a

seizure for Fourth Amendment purposes. "A seizure does not

occur in the absence of physical force used by a law enforcement

officer or a defendant's submission to an officer's assertion of

authority." Id.

"Once a police officer has properly detained a suspect for

questioning, he may conduct a limited pat-down search for

-

weapons if he reasonably believes that the suspect might be armed and dangerous." Williams v. Commonwealth, 4 Va. App. 53, 66, 354 S.E.2d 79, 86 (1987). To support the pat-down, the officer must be able to point to articulable facts from which he could reasonably infer that the defendant might be armed and dangerous. See James v. Commonwealth, 22 Va. App. 740, 754, 473 S.E.2d 90, 92 (1996).

> "Among the circumstances to be considered in connection with this issue are the 'characteristics of the area' where the stop occurs, the time of the stop, whether late at night or not, as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of their presence."

Williams, 4 Va. App. at 67, 354 S.E.2d at 86-87 (quoting United States v. Bull, 565 F.2d 869, 870-71 (4th Cir. 1977), cert. denied, 435 U.S. 946 (1978)).

The encounter in this case took place in a high crime area. Officer Conklin testified that the neighborhood was an "open-air drug market" with "lot[s] of firearms violations," an area where numerous "shots fired" had been reported and numerous "drug arrests" had occurred. The police knew the residence to be one in which narcotics had previously been found and about which recent complaints of narcotics activity had been received. "Suspicion of narcotics possession and distribution is . . . recognized as a circumstance which, standing alone, gives rise to an inference of dangerousness." Williams, 4 Va. App. at 67,

-

354 S.E.2d at 87 (citation omitted).  Under these circumstances, the police were reasonably concerned for their safety and acted reasonably in conducting a protective pat-down search for weapons.  "To hold otherwise would be an invitation to violence in what is always a potentially explosive situation."  Id.

The judgment of the trial court is affirmed.

Affirmed.

-

Benton, J., dissenting.

The evidence proved that the officer obtained Darryl Leon Hall's identification, retained it "to see if he had any warrants on him," and requested his dispatcher to check for outstanding warrants against Hall. I would hold that when the officer did so, he seized Hall for purposes of the Fourth Amendment. See United States v. Mendenhall, 446 U.S. 544, 554 (1980) (holding that a person has been seized "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"). Moreover, when a police officer subjects a person to a protective frisk for weapons, the officer intrudes on that person's privacy and conducts a search and seizure under the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 16-19 (1968). See also Toliver v. Commonwealth, 23 Va. App. 34, 36, 473 S.E.2d 722, 724 (1996) (holding that "[w]hile being frisked, no reasonable person would feel free to walk away").

To conduct a protective frisk for weapons of an "individual whose suspicious behavior he is investigating," an officer must have a reasonable articulable suspicion that the individual "is armed and presently dangerous to the officer or to others." Terry, 392 U.S. at 24. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." Adams v. Williams, 407 U.S. 143, 146 (1972).

-

The record contains no evidence supporting a reasonable articulable suspicion that Hall was armed and dangerous. Indeed, the officer's testimony established that he only frisked Hall to discover drugs. He testified as follows:

> I advised Mr. Hall I was going to pat him down for narcotics and weapons. I noticed a paper towel sticking out of his pocket. The pocket the paper towel was sticking out of - that was the only pocket I went to go into. When he said he would give me everything, he emptied everything but that pocket; and based on the other arrests in the neighborhood, I have recovered crack stems or cocaine smoking devices wrapped in towels.

This testimony does not indicate that the officer was justified in believing or even did believe that Hall was armed and presently dangerous. The officer merely believed that one of Hall's pockets contained drug paraphernalia. In fact, he searched only the pocket where the paper towel indicated to him the presence of a "smoking device." He was not searching for weapons because "that was the only pocket [he] went to go into."

The majority relies on testimony about the surrounding area and the general circumstances of narcotics activity to justify the search. Even if such factors justified a protective frisk for weapons, the officer did not conduct such a search. He was looking for the evidence of crime and not to protect his safety. When an officer makes "no claim that he suspected [the paper towel] to be a weapon," he had no basis to seize it. Minnesota v. Dickerson, 508 U.S. 366, 378 (1993). The seizure and search

-

of the paper towel were the product of an "exploration

. . . unrelated to '[t]he sole justification of the search

[under Terry:] . . . the protection of the police officer and

others nearby.'" Dickerson, 508 U.S. at 378 (quoting Terry, 392

U.S. at 29). As in Dickerson, this officer's search for weapons

"amounted to the sort of evidentiary search that Terry expressly

refused to authorize." Dickerson, 508 U.S. at 378.

> [E]vidence may not be introduced if it was
> discovered by means of a seizure and search
> which were not reasonably related in scope
> to the justification for their initiation.
>
> . . . Suffice it to note that [a
> warrantless weapons] search, unlike a search
> without a warrant incident to a lawful
> arrest, is not justified by any need to
> prevent the disappearance or destruction of
> evidence of crime. The sole justification
> of the search in the present situation is
> the protection of the police officer and
> others nearby, and it must therefore be
> confined in scope to an intrusion reasonably
> designed to discover guns, knives, clubs, or
> other hidden instruments for the assault of
> the police officer.

Terry, 392 U.S. at 29 (citations omitted). See also Harris v.

Commonwealth, 241 Va. 146, 154, 400 S.E.2d 191, 196 (1991)

(holding that the opening of a film canister found in a pat-down

search for weapons exceeded the scope of a Terry search even

though the officer's experience led him to believe "people kept

their narcotics and drugs in film canisters and 'things of that

nature'").

-

I would hold the evidence provides no facts supporting a reasonable articulable suspicion that Hall was armed and dangerous. Thus, the record establishes no lawful justification for the officer to seize the paper towel he saw in Hall's pocket. As in Toliver, the following is controlling:

> The circumstances were insufficient to give [the] Officer . . . an objectively reasonable basis for suspecting that [Hall] was armed and dangerous. He had no information that [Hall] was involved in criminal activity, nor had he observed any criminal behavior. The mere fact that [Hall] was in an area known for drug use created no inference that he was involved in criminal activity. [Hall] cooperated with [the] Officer . . . and . . . gave his correct name. Nothing suggested that he was carrying a concealed weapon. Therefore, the frisk was illegal and the trial court erred in admitting the evidence . . . .

23 Va. App. at 37, 473 S.E.2d at 724 (citations omitted).

For these reasons, I would hold that the trial judge erred in refusing to suppress the evidence. I would, therefore, reverse the conviction and remand for a new trial.