COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Bumgardner
Argued at Alexandria, Virginia


MICHAEL ANTWUAN WILLIAMS

MEMORANDUM OPINION[*] BY
v.        Record No. 2217-04-4         JUDGE JAMES W. HALEY, JR.
                                                        JUNE 20, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Ann Hunter Simpson, Judge

Brent A. Jackson (Olaun A. Simmons; The Jackson Law Group, on
brief), for appellant.

Michael T. Judge, Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


        Convicted of transporting cocaine with intent to distribute, transporting heroin with intent to

distribute, and possession of a firearm while in possession of drugs, Michael Antwaun Williams

maintains the trial court "committed reversible error by holding that appellant, a passenger in a

rental vehicle, had no standing to challenge the traffic stop of said vehicle" and in accordingly

denying a motion to suppress.[1]  We affirm.


_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In Fourth Amendment jurisprudence, for analytical purposes, the establishment of a
reasonable expectation of privacy has replaced the classic concept of "standing."  See Minnesota
v. Carter, 525 U.S. 83, 85 (1998); Rakas v. Illinois, 439 U.S. 128, 139-40 (1987).  "Standing is
subsumed into that inquiry, and 'standing' is now only a shorthand way of referring to the
expectation of privacy inquiry."  1 John Wesley Hall, Jr., Search and Seizure, § 6.1 (3d ed.
2000).

# I.

## STANDARD OF REVIEW

In determining whether or not the trial court properly denied Williams' motion to suppress, "we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004) (citing Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923-24 (2000)).

# II.

## FACTS

The uncontested facts are as follows:

At approximately 1:20 a.m. on March 24, 2003, Stafford County Sheriff's Deputy Kevin Gary observed a vehicle with its interior lights (including the "dome" light) on traveling southbound on Interstate 95. Deputy Gary pulled up next to the vehicle and witnessed the "passenger rolling what . . . appeared to me to be a marijuana cigarette." Gary testified the passenger "was pouring it - - pouring something out of a bag into it, into his cupped hand . . . proceeded to roll the end of the cigarette and then light it." He described the rolled cigarette as "tapered on each end" with "twisted" ends. The deputy testified that he was familiar with marijuana, seeing the same "once a week" as either an arresting or back-up officer. Gary continued:

> Since I've been in law enforcement, I've never come across
> anything that was hand rolled other than marijuana cigarettes. I've
> got family members who work on tobacco farms who roll
> personally. It's not rolled the same, and it doesn't look the same.

Based on his observations, Deputy Gary pulled behind the vehicle, switched on his emergency equipment, and performed a traffic stop. As he approached, all the windows were down, and he smelled marijuana coming from the vehicle. He asked the driver for her license

and registration. She provided a driver's license, which identified her as Twana Davis. She stated the car was rented and produced a Hertz rental agreement that was issued on March 21, 2003 at 8:20 p.m., was to terminate one day later - March 22, 2003 - at the same time, and named one Crystal James as the lessee and sole authorized driver. During the stop, subsequent arrest, and seizure, neither Davis nor appellant offered any information to explain how either had come into possession of the vehicle.

The agreement contained the following language: "No 'additional authorized operators' without Hertz written approval," and "WARNING: You must obtain Hertz's prior written approval for any additional authorized operators." A representative of Hertz testified at trial that the vehicle was "rented 3-21, [with] charges for one day, and you're supposed to return on 3-22, so one day." He confirmed Crystal James was the only authorized driver.

At the scene, Gary also asked the appellant for identification. After appellant stated that he did not have an ID, Gary asked him to step out of the vehicle. As appellant opened the door and began to exit, "two little red plastic baggies" fell from under his leg into the floorboard of the vehicle. Gary testified that "[t]hey appeared to be marijuana," as later analysis proved. Gary subsequently arrested appellant for possession of marijuana. A search of appellant incident to this arrest produced $2,800 in cash and a brick of cocaine. A subsequent search of the vehicle garnered a half-kilo of heroin, $18,000 in cash, a loaded .357 revolver, and various other drug paraphernalia and residue.

As here relevant, appellant moved to suppress "all items seized as a result of the illegal stop." Appellant offered no evidence at the suppression hearing. Following argument, the trial court denied the motion, holding that defendant was "without standing to challenge the stop."[2]

---

[2] The trial court further held that it accepted the testimony of Deputy Gary as credible and persuasive and found he had "reasonable articulable suspicion" to justify the stop, in accordance with the principles enunciated in Delaware v. Prouse, 440 U.S. 648, 653 (1979).

III.

ANALYSIS

An individual may only assert a Fourth Amendment violation if he has "a reasonable expectation of privacy" in the place searched. Rakas v. Illinois, 439 U.S. 128, 130 (1987); DeLong v. Commonwealth, 234 Va. 357, 363, 362 S.E.2d 669, 672 (1987); Hardy v. Commonwealth, 17 Va. App. 677, 680, 440 S.E.2d 434, 436 (1994).

In support of a motion to suppress, the defendant has the burden of proving he has a reasonable expectation of privacy in the place searched. Rawlings v. Kentucky, 448 U.S. 98, 104 (1980); Barnes v. Commonwealth, 234 Va. 130, 135, 360 S.E.2d 196, 200 (1987); Sharpe v. Commonwealth, 44 Va. App. 448, 455, 605 S.E.2d 346, 349 (2004).

> In order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched . . . [and] . . . a defendant must demonstrate . . . that his expectation is reasonable; i.e., one that has "a source outside of the Fourth Amendment, either by reference to concepts of real property or personal property law or to understandings that are recognized and permitted by society."

Minnesota v. Carter, 525 U.S. 83, 88 (1998) (citations omitted).

In Josephs v. Commonwealth, 10 Va. App. 87, 91, 390 S.E.2d 491, 492 (1990) (*en banc*), the appellant was a passenger in a rental car, which had been rented to a third party who was not present in the vehicle. The rental agreement showed that neither the appellant nor the driver was an authorized driver, that the vehicle was not to be driven outside Florida, and that "the occupants were not authorized to have possession of the vehicle." Appellant was charged with theft of the vehicle, and a subsequent search of the same produced 130 pounds of marijuana. Appellant filed a motion to suppress.

This Court formulated the issue presented as follows:

> The defendant challenges the legality of the initial stop of the vehicle, which she asserts was a violation of her right under the

- 4 -

> fourth and fourteenth amendments to be free from illegal seizure. The Attorney General contends that, since the defendant was a thief in a stolen car, she has no standing to complain of the stop and search of the car.

Id. at 91, 390 S.E.2d at 493.

Noting that a stop of a motor vehicle is a seizure, this Court resolved the above issue by holding as follows:

> Having only an illegitimate, wrongful, and unreasonable expectation of privacy in the stolen vehicle, Josephs lacks standing to object to the stop of the car. *Josephs' expectation of privacy in her own person does not confer automatic standing upon her to contest the stopping* of the vehicle in which she was riding when she had no reasonable expectation of privacy in it.

Id. at 98, 390 S.E.2d at 497 (emphasis added).

As this Court further explained, while a passenger may have a legitimate expectation of privacy in their person when a vehicle is stopped, that principle "presupposes the occupant's rightful presence in the vehicle. Otherwise the privacy expectation is not legitimate." Id. at 96, 390 S.E.2d at 496. Rather, an occupant has the burden of establishing a "property []or a possessory interest" in the vehicle as a condition precedent to a Fourth Amendment challenge. Id. at 97, 390 S.E.2d at 496. "'[M]ost courts agree that an occupant of a vehicle cannot be said to have standing by virtue of his presence if he is in possession of a stolen or otherwise illegally possessed or controlled vehicle.'" Id. at 92, 390 S.E.2d at 493 (quoting 4 W. LaFave, Search and Seizure § 11.3(e) (2d ed. 1987)). This Court's analysis flowed from Rakas, where appellants occupied a vehicle they "neither owned nor leased" and "asserted neither a property nor possessory interest in the automobile." 439 U.S. at 140, 148. Finally, this Court specifically rejected the minority's view that there was a distinction between "standing to challenge a *search* of an automobile in which she was riding and her standing to challenge a *stop* of the same

automobile," and maintaining standing for the later remained. Josephs, 10 Va. App. at 102, 390 S.E.2d at 499 (Barrow, J., dissenting) (emphasis in original).

Though dealing with standing as to a search of a vehicle rather than the stop of the same, in Bell v. Commonwealth, 264 Va. 172, 190, 563 S.E.2d 695, 708 (2002), the appellant asserted a reasonable expectation of privacy in a vehicle because "he had been driving it, had the keys in his possession and had parked it in a parking lot, leaving it locked with his belongings inside." The vehicle had been impounded by a lien-holder. The owner had not given appellant permission to use the vehicle; the owner's girlfriend had taken the car from the impoundment lot; she had twice given appellant permission to use it; appellant had returned the vehicle to her once, but not the second time, despite her requests that he do so.

There, the Virginia Supreme Court held that the defendant

> bore the burden of proving he had a legitimate expectation of privacy in the vehicle so as to confer standing to challenge the search. He did not carry that burden. Bell did not own the vehicle, and he did not establish that he was authorized to have the car in his possession when it was searched. See United States v. Wellons, 32 F.3d 117, 119 (4th Cir. 1994) (unauthorized driver of rental had no legitimate expectation of privacy in the vehicle) . . . . [Bell] lacked the requisite standing to challenge the search of the vehicle.

Id. (citation omitted).

More specifically, and though dealing with the drivers of rental cars, other jurisdictions have addressed the issue of permissive use of such vehicles. In Commonwealth v. Jones, 874 A.2d 108, 120 (Pa. Super. Ct. 2005), the court held:

> Appellant cannot claim a reasonable expectation of privacy in the automobile. Further, Appellant's subjective expectation of privacy was not reasonable where he was the operator of a rental car but not the named lessee, was not an authorized driver, the named lessee was not present in the vehicle, *Appellant offered no*

- 6 -

*explanation of his connection to the named lessee*, and the return date for the rental car had passed.

(Emphasis added).

In State v. Hill, 94 P.3d 752, 757-59 (Mont. 2004), the Montana Supreme Court found as follows:

> Considering [appellant's] status as an unauthorized driver [of a rental car], *combined with his failure to demonstrate any relationship with an authorized user*, it is doubtful that he had an actual or subjective expectation of privacy in the vehicle's trunk and its contents. . . . [Defendant] had not rented the car, and he had no permission to use the car. . . . We find [defendant] had no reasonable expectation of privacy in the vehicle and its contents.

(Emphasis added). See also United States v. Seeley, 331 F.3d 471, 472 (5th Cir. 2003) (per curiam) ("Seeley has not established that there was plain error in the holding that he lacked standing to challenge the search of the rental car, as he (the sole occupant of the car) was not the renter or an authorized driver."); United States v. Roper, 918 F.2d 885, 887-88 (10th Cir. 1990) ("Roper did not have standing to challenge the search of the [rental] vehicle he was driving at the time of the stop. He was not the owner nor was he in lawful possession or custody of the vehicle.").

In the instant case, the evidence affirmatively shows that neither the driver of the rental vehicle, Davis, nor appellant was the lessee or an authorized driver. The record contains no evidence of any relationship between the lessee and either Davis or appellant, nor any evidence as to how either came into possession of the vehicle.

We hold that, in the absence of evidence sufficient to establish a valid possessory interest, neither the driver nor a passenger of a rental vehicle has a reasonable expectation of privacy in that vehicle, where the terms of the rental agreement do not include either as the lessee or an authorized driver. Josephs, an *en banc* decision of this Court, held that the establishment of a reasonable expectation of privacy in a vehicle was a condition precedent to a grant of standing to

- 7 -

assert a constitutional challenge to the stop of that vehicle. Here, appellant failed to establish a

reasonable expectation of privacy in the rental vehicle. That failure, consistent with Josephs and

the principle of *stare decisis*, denies appellant standing to challenge the stop of the vehicle.[3]

Appellant's convictions are therefore affirmed.

Affirmed.

---

[3] By *per curiam* order dated August 8, 2005, this Court granted an appeal on the following issue: "I. Whether appellant, the passenger in a rental car, had standing to object to the stop of the vehicle." In accordance with that order and by letter dated August 23, 2005, counsel advised the following: "Appellant hereby states the following question presented for review: 1. Whether the trial court erred by finding that the appellant, a passenger in a rental car, did not have standing to object to the stop of the vehicle." Appellant's brief states the "assignment of error" as follows: "I. The trial court committed reversible error by holding that Appellant, a passenger in a rental vehicle, had no standing to challenge the traffic stop of said vehicle."

Rule 5A:20 requires appellant's brief to contain "a statement of the questions presented" and "the principles of law, the argument, and the authorities relating to each question presented . . . ." Thus, in Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992), we held that "[s]ince this argument was not fully developed in the appellant's brief, we need not address this question."

On brief, appellant makes no argument whatsoever that the police officer did not have reasonable articulable suspicion to stop the vehicle. Rather, the brief, properly, addresses only the assignment of error; that is, does appellant under these facts have a reasonable expectation of privacy, or standing, in a rental vehicle. Appellant's brief complies with Rule 5A:20.

In Parker v. Commonwealth, 42 Va. App. 358, 592 S.E.2d 358 (2004), we held that "In beginning our analysis . . . 'on appeal, we will consider "only those arguments presented in the petition for appeal *and granted by this Court* . . .""" Id. at 373, 592 S.E.2d at 366 (quoting Megel v. Commonwealth, 37 Va. App. 676, 679, 561 S.E.2d 21, 22 (2002) (quoting Alexander v. Commonwealth, 28 Va. App. 771, 776, 508 S.E.2d 912, 914, aff'd on reh'g en banc, 30 Va. App. 152, 515 S.E.2d 808 (1999), rev'd on other grounds, 260 Va. 238, 531 S.E.2d 567 (2000))) (emphasis added).

The dissent concludes the motion to suppress should have been granted because "the deputy lacked a reasonable basis to suspect that [appellant] was involved in criminal activity" and "the evidence [was] discovered as a consequence of the illegal stop . . . ." However, no appeal was ever granted by this Court on that issue. The appeal was granted on the issue of standing alone. The establishment of a reasonable expectation of privacy, or standing, is a condition precedent to a Fourth Amendment challenge. For these reasons, we do not address the dissent.

Benton, J., dissenting.

I believe the proper question for us to consider on appeal is the one raised in Michael A. Williams's petition for appeal, asking whether the deputy sheriff had proper grounds to seize Williams. I would hold that the trial judge erred in ruling that Williams could not challenge his detention and in concluding that the deputy sheriff had a reasonable articulable suspicion to detain Williams. The trial judge should have suppressed any evidence derived from the unlawful detention. Therefore, I would reverse the convictions and remand for a new trial.

At trial, the evidence proved the deputy sheriff caused the driver of the sports utility vehicle to stop because he saw Williams, the passenger, commit an act that he suspected was unlawful. Specifically, he suspected Williams rolled marijuana into cigarette paper and began smoking it. At trial, Williams argued that stopping him while he was in the car violated his Fourth Amendment rights because "[t]he Supreme Court has always recognized the right of every person to the possession and control of his own person, free from all restraint or interferences of others unless by clear and unquestionable authority of law." Relying upon the principles announced in Terry v. Ohio, 392 U.S. 1 (1968), he argued that he had "standing to protest . . . any illegal stop as a result of the seizure of [his] person." The trial judge ruled, however, that "the driver was not an authorized driver of this vehicle" and that "Williams is without standing to challenge this stop and detention."

When Williams filed his petition for appeal, he raised the following issue concerning the detention:

> Whether the trial court erred by failing to find that the law enforcement officer did not have the requisite probable cause or reasonable suspicion of criminal activity prior to seizing the defendant for [an] extended time period.

- 9 -

The order granting the petition for appeal recast the issue to: "Whether appellant, the passenger in a rental car, had standing to object to the stop of the vehicle." Conforming to the order granting the appeal, Williams's brief raises the issue "[w]hether the trial court committed reversible error by holding that Appellant, a passenger in a rental vehicle, had no standing to challenge the traffic stop of said vehicle." I believe Williams's petition raised a valid issue for appeal that is more narrowly focused than the broad question raised by the order granting the appeal. Thus, I believe this Court should address the issue that Williams properly raised in his petition for appeal.

After ruling that "Williams is without standing to challenge this stop and detention," the trial judge found alternatively that although the deputy did "not [have] the most experience or the most training [she] . . . has ever encountered in a case, [the deputy] did have adequate training and experience to guide him in making the suspicion that he's testified to that he made." The trial judge ruled "that this deputy had reasonable articulable suspicion based upon the facts to support criminal activity." In our review of this ruling, we must give deference to the trial judge's factual findings, but, because the constitutionality of a seizure involves questions of law and fact, we must "independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements." Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004).

The United States Supreme Court established long ago that, when the police detain for investigative purposes persons who are in an automobile, the police must have either probable cause or a reasonable articulable suspicion that either the automobile or the occupants of the automobile are subject to seizure under the criminal or traffic laws. United States v. Brignoni-Ponce, 422 U.S. 873, 878-81 (1975). This is so "because stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth]

- 10 -

Amendments." Delaware v. Prouse, 440 U.S. 648, 653 (1979); see also Zimmerman v.

Commonwealth, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988) (holding that "[w]hen the police

stop a motor vehicle and detain an occupant, this constitutes a 'seizure' of the person for Fourth

Amendment purposes").

Viewing the tape taken from his patrol car's camera, the deputy testified as to his

decision to stop the vehicle:

> A: As I stated, when I saw what was being lit beside me, the
> flickering -- what the camera picks up as the flickering light is
> what I watched, the defendants lighting up what I believed to be a
> marijuana cigarette and start to smoke it. That's when I pulled in
> behind the vehicle and made my traffic stop.
>
> Q: And at that point in time, that was when you discerned that you
> needed to stop the vehicle; is that correct?
>
> A: That's correct.
>
> Q: And notwithstanding -- and when you decided to stop the
> vehicle, sir, that was based just on the lighting of what you
> suspected was marijuana, right?
>
> A: Correct.[4]

---

[4] On direct examination, without reference to the videotape, the deputy testified that when he approached the vehicle to the left and was slightly behind the driver's door, he noticed the interior dome light of the vehicle was illuminated and saw "the passenger . . . was rolling . . . what appeared to [the officer] to be a marijuana cigarette." After the passenger lit the item, the deputy activated his emergency equipment to stop the vehicle.

On cross-examination, the deputy explained that, although he earlier testified that the vehicle's interior dome light was continuously illuminated, the tape from his patrol car's camera did not show that. The deputy sheriff acknowledged that the tape showed the dome light "go on" and then "off" as the vehicle was in front of his car. He testified: "On the tape I see it go on and off. At the time, I did not see it go on and off." He also said "that night I didn't pick up on [the light] going on and off. I picked up on it being on." Viewing the tape, he also acknowledged that, when the vehicle was to his right and slightly ahead of his car, the tape indicated the interior light was not illuminated and that when he moved behind the vehicle to stop it the interior light was "off." He persisted, however, in his recollection that the vehicle's interior dome light was continuously illuminated, and said "[the tape] picks up on what the tape saw."

Despite these discrepancies, the trial judge ruled that there was no substantial disparity between what the tape depicted and what the officer testified he saw that morning. The trial judge also noted that the evidence showing the deputy sheriff "has been terminated from [his]

The deputy sheriff did not stop the vehicle in which Williams was a passenger because he saw a traffic infraction, despite his use of the term "traffic stop." He testified that the vehicle was not speeding or violating any traffic laws. When the deputy stopped the vehicle, he did so solely because he believed Williams, the passenger, had violated a law unrelated to the registration or use of automobiles.

"An individual . . . traveling in an automobile does not lose all reasonable expectation of privacy simply because [that individual is in] the automobile." Prouse, 648 U.S. at 662. Because the deputy detained Williams for suspicious behavior separate and apart from traffic concerns, the legal analysis is no different than if Williams had been walking down the street instead of riding in an automobile. See id. at 663 (citing Terry and stating that "people are not shorn of all Fourth Amendment protections . . . [or privacy] interests when they step from the sidewalks into . . . automobiles"). Williams had standing to contest his detention, which occurred by the deputy sheriff's stop of the vehicle.

The legitimacy of the deputy's stop of the vehicle and consequent detention of Williams is governed by the usual Terry analysis. Under the well-established Terry principle, a deputy sheriff may initiate an investigatory stop of an individual only when the deputy has "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." Brown v. Texas, 443 U.S. 47, 51 (1979).

In our analysis of the Terry issue, we do "not overlook or disregard the officer's articulated, particularized . . . basis for his actions." Zimmerman, 234 Va. at 612, 363 S.E.2d at 710. The deputy testified in detail about the facts that gave rise to his suspicion. The deputy acknowledged he was not able to discern what the passenger was putting onto the cigarette

---

employment for reasons that may be relative to veracity . . . does not impeach him as a witness on the issue of his credibility in this case."

paper. He testified that "[d]uring the whole time [he] wasn't able to say -- pinpoint exactly what [the passenger] was putting into it" and "[he] wasn't able to tell exactly what it was coming out of." He saw no pouch or baggy or any other container.

> Q: So all you used for the basis of stopping these individuals was the fact that they rolled a cigarette, which, based on your hunch, was marijuana; is that correct?
>
> A: Based on my suspicion it was. Yes, sir.

The Terry standard of "reasonable suspicion" required the deputy sheriff to articulate something more than an "inchoate and unparticularized suspicion or 'hunch'" that criminal activity was occurring. 392 U.S. at 27. Explaining his experience, the deputy sheriff further testified as follows:

> Q: Okay. Do you know how to roll -- well, have you ever encouraged or observed -- I'm going to back up a little bit, sir. You have never rolled a cigarette, tobacco cigarette; is that correct?
>
> A: Right.
>
> Q: You never learned how to roll one; isn't that correct?
>
> A: That's correct.
>
> Q: You have never saw or observed anybody roll a clove cigarette; is that correct?
>
> A: I have seen someone roll a clove cigarette, yes, sir.
>
> Q: And do you know how to do it yourself, sir?
>
> A: No, I don't.
>
> Q: And would I be correct in stating, sir, that when people roll their own smoking device, they use a multitude of ways of doing it; is that correct?
>
> A: That's correct.

*      *      *      *      *      *      *

- 13 -

Q: And would it also be correct in stating, sir, that people who roll cigarettes sometimes twist an end; isn't that correct?

A: That would be a fair statement to say, I guess.

Q: So when you saw Mr. Williams, or the passenger, twist the cigarette, you presumed it was marijuana instead of a cigarette, is that correct?

A: That's correct.

Q: And why was that, sir, when you have a history or have observed people twisting the ends of cigarettes who roll their own cigarettes?

A: Because as I stated earlier, in the time I've been with the Sheriff's Office, I have yet to come across one that was rolled that wasn't a marijuana cigarette.

Q: However, at the same time, sir, you have observed people roll and twist an end, and they were smoking something legitimately; is that correct?

A: Yes, sir. That wasn't while I was with the Sheriff's Office though.

Q: So why on this occasion, when you've had legitimate -- or have observed people twisting cigarettes legitimately, did you just presume that this gentleman had an illegal narcotic?

A: As I stated just a minute ago, based on prior times with the Sheriff's Office where I've come into contact with a rolled cigarette, it was always a marijuana cigarette. I have yet to ever come across a rolled cigarette, and the rolled cigarettes I did come across was back when I was a teenager on my uncle's farm. So that's the only time I've seen anyone roll a cigarette.

When, as here, the deputy sheriff's testimony, "viewed as a whole, demonstrates innocent, lawful conduct," the evidence fails to articulate "a basis for a reasonable suspicion of illegal, criminal conduct." Zimmerman, 234 Va. at 612, 363 S.E.2d at 709-10. Beyond his hunch that "the defendant [was] lighting up what [he] believed to be a marijuana cigarette," no other evidence in this record establishes a fact or circumstance that supports the deputy's conclusion. See Brown, 443 U.S. at 51-52 (holding that a finding of reasonable suspicion of

- 14 -

criminal activity is flawed when the observed conduct is indicative of innocent activity and an officer is unable to point to any fact supporting his suspicion); Matthews v. Commonwealth, 218 Va. 1, 3, 235 S.E.2d 306, 307 (1977) (noting that officer who saw cigarette paper and a brown bag on the floor of a car, without any other circumstances connecting the two, could not rationally conclude that the bag contained marijuana).

The inference the deputy sheriff drew from seeing a person roll an unseen substance into cigarette paper was not a reasonable basis upon which to conclude the unseen substance was marijuana. Law abiding people roll cigarettes for their own personal use. The deputy provided no facts beyond his hunch that the substance he saw being put onto the cigarette paper was not tobacco. Indeed, he testified that he could not discern whether the substance was coming from a pouch in which tobacco would be sold. The deputy's hunch does not become reasonable suspicion merely because he had not seen anyone roll a cigarette since he was a teenager visiting a farm or because during his time with the sheriff's office every time he had "come in contact with a rolled cigarette, it was always a marijuana cigarette."

Judged on an objective standard, the facts and circumstances indicate the deputy sheriff saw nothing more than conduct that was indicative of a person rolling and lighting a cigarette. The conduct that the deputy observed when "viewed either in isolation as the officer considered it or along with the other behavior as the court must examine it, is utterly insufficient to generate a reasonable suspicion that the defendant was involved in criminal activity." Zimmerman, 234 Va. at 612, 363 S.E.2d at 710. The deputy lacked a reasonable basis to suspect that Williams was engaged in criminal conduct, and therefore his detainment was unlawful. See Prouse, 440 U.S. at 663 (noting that stopping a vehicle to detain an occupant in the absence of at least an articulable, reasonable suspicion of an offense is an unlawful seizure of the occupant within the meaning of the Fourth Amendment).

The Commonwealth seeks to use against Williams incriminating evidence discovered as a result of the unlawful detention of Williams. "If evidence is seized during an illegal stop, it is not admissible at trial under the doctrine known as 'the fruit of the poisonous tree.'" Jackson, 267 Va. at 672, 594 S.E.2d at 598; see Wong Sun v. United States, 371 U.S. 471, 484-88 (1963) (excluding evidence obtained as the result of illegal police action). "'The exclusionary rule operates . . . against evidence seized and information acquired during an unlawful search or seizure . . . [and] against derivative evidence discovered because of the unlawful act.'" Watson v. Commonwealth, 19 Va. App. 659, 662, 454 S.E.2d 358, 360 (1995) (quoting Warlick v. Commonwealth, 215 Va. 263, 265, 208 S.E.2d 746, 748 (1974)). Thus, the trial judge erred in admitting the evidence found as a result of the deputy's unlawful detainment of Williams.

I believe the officer unlawfully detained Williams by stopping the vehicle in order to investigate Williams's conduct. Therefore, I would hold that the evidence discovered as a consequence of the illegal stop should have been suppressed at trial, and I would reverse the convictions and remand for a new trial if the Commonwealth be so advised.