PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Petty and AtLee
Argued at Lexington, Virginia

JAMES DEAN CANTRELL

v.      Record No. 1805-14-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT J. HUMPHREYS
JULY 28, 2015

FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Jack S. Hurley, Jr., Judge

Robert M. Galumbeck (Galumbeck, Dennis & Kegley, on brief), for
appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


James Dean Cantrell ("Cantrell") appeals the ruling of the Circuit Court of Tazewell

County (the "trial court") denying his motion to suppress the evidence recovered as a result of a

police inventory search related to his indictments for possession of cocaine and

methamphetamine.  Specifically, Cantrell argues that the inventory search was not performed

pursuant to standard police procedures and was merely pretext for an improper investigatory

search.

I.  BACKGROUND

In reviewing a trial court's denial of a motion to suppress, "we determine whether the

accused has met his burden to show that the trial court's ruling, when the evidence is viewed in

the light most favorable to the Commonwealth, was reversible error."  Roberts v.

Commonwealth, 55 Va. App. 146, 150, 684 S.E.2d 824, 826 (2009).  This Court is "bound by the

trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them

and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." Hughes v. Commonwealth, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2000) (en banc).

So viewed, the record establishes that on the night of March 27, 2012, Officer Millard McGhee ("Officer McGhee") of the Richlands Police Department ("RPD") conducted a traffic stop of Cantrell for failure to stop at a stop sign. After Cantrell failed a field sobriety test, Officer McGhee placed Cantrell under arrest for driving under the influence ("DUI") and transported him to Clinch Valley Hospital to have his blood drawn. Cantrell's blue Chevy pickup truck was towed from the scene immediately after his arrest. Pursuant to RPD policy, one of the two towing service companies used by RPD towed the truck "straight from the scene to the police department." Because Cantrell had wood furrier strips and tools in the back of the vehicle, the truck was stored in the RPD's open bay gym, instead of the uncovered lot, to protect Cantrell's property. Officer McGhee conducted the inventory search of Cantrell's truck the next morning because, by the time he finished processing Cantrell's DUI, McGhee's shift was complete.

When Officer McGhee conducted the inventory search of Cantrell's truck the next day, he listed any potentially valuable items and contraband on a sheet of notebook paper that was added to the case file. Officer McGhee also took photographs of the items in the truck. Given that "the interior [of the truck] had a lot of garbage," Officer McGhee did not document every single item because doing so would be impractical. During the search, Officer McGhee discovered a glass pipe underneath the driver's seat containing methamphetamine and another

glass pipe in a pair of tan shorts behind the seat containing cocaine. Additionally, Officer McGhee found two oval blue pills in a "black toboggan" rolled up in a suitcase behind the seat. The pills were later identified as Oxycodone.

Cantrell was indicted for possession of methamphetamine, possession of cocaine, and possession of Oxycodone. Cantrell moved to suppress the evidence seized in the inventory search arguing that the search was invalid because it was merely pretext concealing an investigatory motive.

At the suppression hearing, the Commonwealth presented evidence that the RPD has a written policy making it mandatory for police to impound vehicles involved in DUI arrests. The reason for this policy is to "protect the safety of our officers as well as the property of the offenders." The RPD does not have a written policy detailing the method by which an officer must conduct the inventory search. Officer McGhee did not receive any training from the department "on how to conduct a[n inventory] search." Lieutenant Richard Brown ("Lieutenant Brown") of the RPD, who supervised the inventory search of Cantrell's truck, explained that it is "up to the individual officer how they conduct the inventory [search]." However, the RPD uses a "standard state police issued" impound form and officers have a form for lost or seized property when an item is seized, which is used for all found property. Officers *usually* prepare lists of items found during an inventory search on notebook paper, which are added to the case file and filed "with the Clerk or with the court."

Officer McGhee testified that "[b]ased on his training and experience," his "standard procedure" was to check for contraband and hazards during an inventory search and to search for any valuables that could "come up missing from the vehicle." When asked specifically if contraband was one of the items Officer McGhee was looking for during an inventory search, he

- 3 -

responded, "[c]ontraband is one of the things I'm looking for." When Officer McGhee seizes an item, he prepares a receipt for the property, which is placed in the case file.

After the hearing, the trial court issued a letter opinion suppressing the Oxycodone evidence, but denying Cantrell's motion to suppress the evidence as it related to the glass pipes containing methamphetamine and cocaine. The trial court suppressed the Oxycodone evidence, holding that because there was no departmental policy regarding opening closed containers during an inventory search, the police violated the Fourth Amendment when they opened the suitcase containing the black toboggan hat and the Oxycodone pills. However, the trial court noted that "the RPD's search of [Cantrell's] vehicle was just standardized enough to permit the inclusion of items found in his vehicle, which were not located in closed containers." Thus, the trial court declined to suppress the cocaine and methamphetamine evidence, concluding "that the procedures outlined by both Officer McGhee and Lieutenant Brown, when taken in totality, provide a passable standard for officers to follow when conducting an inventory search." Cantrell then entered conditional guilty pleas to possession of cocaine and methamphetamine, preserving his right to appeal the trial court's partial denial of his motion to suppress the evidence.

## II. ANALYSIS

A. The Community Caretaker Exception to the Search Warrant Requirement

Searches and seizures conducted without a warrant are presumptively invalid. See Minnesota v. Dickerson, 508 U.S. 366, 372 (1993). However, there are a number of functions that police routinely perform that are outside of their duty to investigate crimes and apprehend those suspected of committing them. These functions are broadly referred to as the "community caretaking" functions of the police. Because these functions do not involve the investigation of criminal activity, when they are properly performed by the police, a search warrant may not be

- 4 -

necessary when these community caretaking functions are being carried out. One such exception to the general rule requiring a search warrant is when an inventory search of an impounded vehicle is conducted in accord with the policy considerations recognized by the United States Supreme Court in South Dakota v. Opperman, 428 U.S. 364 (1976), and Cady v. Dombrowski, 413 U.S. 433 (1973). See King v. Commonwealth, 39 Va. App. 306, 309, 572 S.E.2d 518, 520 (2002). "Those policy considerations include: 1) the protection of the owner's property while it remains in police custody, 2) the protection of police against claims or disputes concerning lost or stolen property, and 3) protection of the public and the police from physical danger." Williams v. Commonwealth, 42 Va. App. 723, 730, 594 S.E.2d 305, 309 (2004). Because this exception to the Fourth Amendment's warrant requirement is based upon "the need to protect the owner's property, to protect the police against claims of lost or stolen property, to protect the police from physical danger, and to protect the public from dangerous instrumentalities or substances that may be pilfered from an impounded vehicle," and is not for investigatory purposes, such a search is not unreasonable within the meaning of the Fourth Amendment. Reese v. Commonwealth, 220 Va. 1035, 1039, 265 S.E.2d 746, 749 (1980) (citations omitted). Therefore, contraband or other evidence of crime discovered during a properly conducted inventory search may be seized without a warrant and introduced into evidence at trial. Id.

However, this exception to the warrant requirement is not without limitations. Under the community caretaker exception, the police may conduct a warrantless inventory search of a vehicle only if the following conditions are met: "1) the vehicle must be lawfully impounded; 2) the impoundment and subsequent search must be conducted pursuant to standard police procedures; and 3) the impoundment and subsequent search must not be a pretextual surrogate for an improper investigatory motive." Williams, 42 Va. App. at 731, 594 S.E.2d at 309.

Cantrell does not deny that the vehicle was lawfully impounded following his arrest for DUI. Thus, the only issue on appeal is whether the inventory search was conducted pursuant to "standard police procedures," and if it was, whether the impoundment and search were not merely pretext for an "improper investigatory motive."

### B. Standardized Police Procedure

Although standardized criteria relating to inventory searches are "often codified by a police department into a uniform inventory-search policy," Banks v. United States, 482 F.3d 733, 739 (4th Cir. 2007), "'[t]he existence of . . . [standardized criteria] may be proven by reference to either rules and regulations or testimony regarding standard practices,'" Matthews v. United States, 591 F.3d 230, 235 (4th Cir. 2009) (quoting United States v. Thompson, 29 F.3d 62, 65 (2d Cir. 1994)). To justify a warrantless search, the standardized criteria must sufficiently limit a searching officer's discretion to prevent his search from becoming "a ruse for a general rummaging in order to discover incriminating evidence." Florida v. Wells, 495 U.S. 1, 4 (1990). Policies must provide officers discretion only to the extent necessary to effectuate the purposes of an inventory search—otherwise inventory searches could devolve into "'a purposeful and general means of discovering evidence of crime.'" Id. (quoting Colorado v. Bertine, 479 U.S. 367, 376 (1987) (Blackmun, J., concurring)). Thus, an inventory search that is conducted pursuant to standardized procedures is valid "so long as the purpose of the inventory is . . . not to gather incriminating evidence against the owner." United States v. Brown, 787 F.2d 929, 932 (4th Cir. 1986).

Although there is no binding precedent in Virginia that addresses the adequacy of standardized procedures necessary to satisfy the community caretaker exception, there is an unpublished opinion of this Court and an unreported case from the United States District Court for the Western District of Virginia that are instructive for a factual comparison.

- 6 -

First, in <u>Commonwealth v. Hudgins</u>, No. 1513-12-1, 2013 Va. App. LEXIS 24 (Va. Ct. App. Jan. 22, 2013), this Court held an inventory search to be valid because the vehicle was impounded and searched pursuant to standard police procedures. In reaching its decision, this Court reasoned that the record established the police department had a policy establishing that inventory searches would be performed when a vehicle was towed to a private lot or impound. <u>Id.</u> at *5-6. The policy also required the officer conducting the inventory search to complete a "piece of paper" noting the contents of the vehicle and any damage to it. <u>Id.</u> Unlike the police department in <u>Hudgins</u> which made it mandatory for an officer to complete a "piece of paper" documenting the contents of the vehicle, no such policy existed at the RPD. Officer McGhee testified that *his own standard procedure* was to write down some of the items of the inventory "on a note pad or things that [he] could keep with [his] case notes," but the RPD did not endorse this procedure as mandatory.

In <u>United States v. Carroll</u>, 2012 U.S. Dist. LEXIS 131000 (W.D. Va. Sept. 12, 2012), the United States District Court for the Western District of Virginia analyzed several cases from the Fourth Circuit addressing the adequacy of standardized procedures in determining the ultimate issue of whether an inventory search was conducted in good faith. The district court concluded that

> [t]he mandatory inventory search policy promulgated by the Virginia Department of State Police appropriately sets forth *standardized procedures and search criteria that adequately restricted [the officer's] discretion in conducting the inventory search of defendant's vehicle.* Furthermore, [the officer] performed the inventory search in good faith and not as a pretext for an unconstitutional investigatory search.

<u>Id.</u> at *16 (emphasis added). Specifically, the department policy required the inventory search to be "conducted promptly, generally at the scene of the arrest, after there is a lawful basis to have custody of the vehicle, in a reasonable manner, and with a careful examination of the exterior

and interior of the vehicle, including the engine, trunk, and any containers that might contain property" and that "an SP-158 Form be completed during the inventory search." Id.

In this case, unlike the Virginia Department of State Police in Carroll which had a detailed mandatory inventory search policy and required forms, the RPD has a "policy regarding when [they] impound and when [they] don't impound and inventory searches, but [does not] have a direct policy that states [the officers] have to conduct the inventory search in a certain manner." Officer McGhee, who conducted the search of Cantrell's vehicle, did not receive any training from the department "on how to conduct a[n inventory] search." Additionally, the police department in Carroll utilized standard forms that were mandatory when conducting an inventory search, while the RPD had a standard impound form, but no policy requiring officers to use the form during inventory searches. In further contrast to the police department in Carroll which had "standardized procedures and search criteria that adequately restricted [the officer's] discretion in conducting inventory searches," Carroll, 2012 U.S. Dist. LEXIS 131000, at *26, Lieutenant Brown, who supervised the inventory search of Cantrell's truck, explained that it is "up to the individual officer how they conduct the inventory [search]."

Unlike the police departments in Hudgins and Carroll which had mandatory policies governing how inventory searches were to be performed, the RPD had no mandatory policy whatsoever. Instead, the RPD gave individual officers unfettered discretion in the manner in which they conducted an inventory search, a practice that is inapposite to the underlying principles of the community caretaker exception. Thus, we find no support in the record for the trial court's conclusion that RPD's inventory search policy "was just standardized enough" to pass muster under the second prong of Williams. Therefore, because the inventory search of Cantrell's truck was not conducted pursuant to any standardized procedures that would limit

officer discretion in any way, the community caretaker exception to the warrant requirement does not apply to the inventory search of Cantrell's vehicle.

### C. Pretext for Improper Investigatory Motive

Cantrell also argues that the search was merely pretext for an improper investigatory search. We also agree with his argument in this regard. While it is true that "inventory searches are not 'unreasonable' within the meaning of the Fourth Amendment . . . the inventory exception does not apply when the inventory is merely 'a pretext concealing an investigatory police motive." Reese, 220 Va. at 1039, 265 S.E.2d at 749 (quoting Opperman, 428 U.S. at 376). First, as proof of investigatory intent, Cantrell points to Officer McGhee's statement that when conducting an inventory search, he looks for contraband. Officer McGhee testified that "[b]ased on his training and experience," his "standard procedure" was to check for *contraband* and hazards during an inventory search and to search for any valuables that could "come up missing from the vehicle." Despite the fact that these purported reasons reference some of the underlying principles of the community caretaker's exception, when asked specifically to clarify if contraband was one of the things Officer McGhee was looking for during the inventory search, he responded, "[c]ontraband is one of the things I'm looking for." This glaring admission proves that Officer McGhee's search of Cantrell's vehicle was not for the benign purposes underlying the community caretaker exception; instead, one of his reasons for performing the inventory search was to improperly search for contraband and other evidence of crime.

Cantrell next contends that the fact that there was no time limit on when the inventory search was to be conducted after the impoundment of the vehicle is further evidence of Officer McGhee's investigative intent. It is well established that "[o]bjective reasonableness remains the linchpin of determining the validity of action taken under the community caretaker doctrine. Moreover, the reasonableness of a search depends on the facts and circumstances of each case."

King, 39 Va. App. at 312, 572 S.E.2d at 521 (citations omitted). In this case, the officer's decision to tow Cantrell's truck to the police station and store it in the open bay gym overnight was reasonable under the circumstances. After Cantrell's arrest for DUI, his blue Chevy pickup truck was towed "straight from the scene to the police department." Because Cantrell had wood furrier strips and potentially valuable tools in the back of the vehicle, the truck was stored in the department's open bay gym, instead of the uncovered lot, to protect Cantrell's property. Officer McGhee conducted the inventory search of Cantrell's truck the next morning because, by the time he finished processing Cantrell's DUI, McGhee's shift was complete. The slight delay in conducting the inventory search was reasonable in light of the circumstances and does not suggest bad faith or improper investigative intent on the part of Officer McGhee. See also Murphy v. United States, 552 F.2d 405, 412-13 (4th Cir. 2009) (holding officer's decision to complete the inventory search after the vehicle was towed to the sheriff's department was "entirely reasonable under the circumstances" given the traffic stop occurred in the early morning hours along a busy highway).

Cantrell also claims that the incomplete inventory list Officer McGhee prepared on notebook paper suggests the inventory search was merely pretext. We also find this argument is without merit. When Officer McGhee conducted the inventory search of Cantrell's truck the next day, he noted any potentially valuable items and contraband on a sheet of notebook paper that was added to the case file. Given that "the interior [of the truck] had a lot of garbage," Officer McGhee did not document every single item because doing so would be impractical. The Fourth Circuit has held "[a]ny omissions from the inventory list created from the search of [the defendant's] car were not sufficient to create an inference of bad faith on the part of police." United States v. Stanley, 4 F. App'x 148, 150 (4th Cir. 2001).

Therefore, while the timing of the inventory search and the incomplete inventory list do not establish that the search here was pretextual, Officer McGhee's admission that searching for contraband was one of the purposes for performing the inventory search clearly establishes that the inventory search of Cantrell's vehicle was conducted with an improper investigatory motive in violation of the United States Supreme Court's holding in <u>Wells</u> and this Court's holding in <u>Williams</u>.

III.  CONCLUSION

Because we conclude that the inventory search was not performed pursuant to any standardized police procedures of the RPD, and was instead conducted in a manner determined by Officer McGhee's sole and unfettered discretion and also because the search was conducted with an investigatory motive that is inconsistent with the purpose of the community caretaker doctrine, we reverse the trial court's denial of Cantrell's motion to suppress the evidence obtained from the inventory search and remand for a new trial consistent with our analysis and holding if the Commonwealth is so advised.

<u>Reversed and remanded.</u>