COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, Malveaux and Senior Judge Annunziata
Argued by videoconference


ANTONIO DARON FUTRELL

MEMORANDUM OPINION* BY
v.      Record No. 0470-20-1                    JUDGE MARY BENNETT MALVEAUX
                                                JULY 6, 2021
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Bonnie L. Jones, Judge

Charles E. Haden for appellant.

Maureen E. Mshar, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Antonio Daron Futrell ("appellant") entered conditional guilty pleas pursuant to Code

§ 19.2-254 to attempted malicious wounding, in violation of Code §§ 18.2-26 and 18.2-51, use of a

firearm in the commission of a felony, in violation of Code § 18.2-53.1, possession of a firearm by a

convicted felon, in violation of Code § 18.2-308.2, and shooting into an occupied building, in

violation of Code § 18.2-279.  On appeal, he contends that the trial court erred by denying his

motion to suppress the evidence obtained from a warrantless search of his cell phone because he did

not disavow ownership of his cell phone and had a reasonable expectation of privacy regarding its

contents.  For the following reasons, we affirm.

I.  BACKGROUND

On October 7, 2018, Charles Kelley was working as a private security guard at the

"Catch N Release" restaurant in Hampton.  At 1:00 a.m., as the restaurant was closing, Kelley

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

saw four individuals, including appellant, leave the restaurant. Once outside, appellant told a waitress, "I want you to go inside and get my phone, B[itch]." The waitress told appellant, "You don't have to talk to me like that, but we can go inside to get your phone." Appellant responded, "No, you're going to get me my phone now, B[itch]." Appellant was "very hostile" towards the waitress. Kelley stepped in front of appellant and said, "Excuse me, all you have to do is stop, wait a minute, and we can see if we can go inside and find your phone."

After Kelley told appellant that the waitress would look for his phone, appellant "became more hostile." Appellant, who was within two feet of the waitress, started "swinging his hands" and was "getting ready to grab" her. Appellant turned to a companion and told him, "Go get my shit." The individual went to a vehicle and returned with a firearm and a magazine containing ammunition. Kelley stepped about five feet from the individual, drew his weapon, and said, "Please drop your weapon." The individual put down the firearm, and Kelley backed away. Appellant then picked up the firearm and loaded the weapon. Kelley again drew his weapon and told appellant to drop his firearm, at which point appellant started firing his gun in Kelley's direction. Once appellant "started firing, he kept firing," so Kelley returned fire and struck the vehicle which had contained the gun. Kelley heard, "Oh shit," and then saw appellant and the other individual leave in the car. Kelley did not see appellant again that evening.

While investigating the shooting, Detective Steven Rodey of the Hampton Police Division learned that other officers had recovered a cell phone that had been left at the restaurant. Rodey inspected the phone and found that "it wasn't a typical phone where you can take off the back and expose the battery, which would have the serial numbers, IME numbers, everything attached to it."[1] Rodey pressed the power button and the phone automatically turned

---

[1] Rodey testified that IME numbers are used to find the phone number associated with a particular cell phone.

on, as "[i]t was not locked with any passwords or anything." Rodey was able to find the cell phone's IME and phone numbers using the "settings" feature on the phone. After finding these numbers, the detective put the phone in "airplane mode" and returned it to the police department's property and evidence department. Rodey did not attempt to view call logs, text messages, or applications on the phone. The detective did not have a search warrant when he turned the phone on and located the IME and phone numbers.

To find out which phone company was associated with the phone number, Detective Rodey entered the cell phone number into "LInX," a program that consolidates police reports throughout the region. The program indicated that there was "some kind of association with" appellant's name and the cell phone number and provided a photograph of appellant. The image was used in a photo lineup shown to Kelley, and Kelley positively identified appellant as the shooter.

Later, police learned of another cell phone number associated with appellant. Rodey obtained a "realtime GPS track search warrant for" the cell phone associated with that number. As a result of tracking the phone, police were able to locate appellant.

Prior to trial, appellant moved to suppress "any and all evidence obtained as a result of a search" of his cell phone. At the suppression hearing, appellant argued that the evidence resulting from the search of the cell phone should be suppressed because a search warrant was not obtained prior to the search of the phone, citing Riley v. California, 573 U.S. 373 (2014), in support. Appellant also argued that the Commonwealth's assertion that he abandoned his phone and thus had no reasonable expectation of privacy in the contents of the phone was in error because the evidence demonstrated that he had not abandoned his phone.

The trial court denied the motion to suppress, finding that

> I agree with the Commonwealth here. I'm not finding that the
> business excluded him. The problem here is that after shooting, he

left. And I agree with the Commonwealth that he could have stayed and gotten his phone, but he did abandon the phone after he left. I'm not going to address the intervening criminal act. I'm going to address the fact that he left the premises, abandoning the phone, which then takes away his standing. I was looking at <u>Riley</u>, and I found a distinguishing fact in <u>Riley</u> and several of these other cases that in that line of cases, a cell phone was taken from the person, and in <u>Riley</u> they don't even address abandonment. So I think the problem here is that once he made the decision to leave, didn't come back, didn't check with anybody to try to get the phone, then he had abandoned the interest in the phone. So I'm going to deny the motion to suppress.

This appeal followed.

## II. ANALYSIS

Appellant contends that the trial court erred by denying his motion to suppress. Specifically, he challenges the trial court's finding that he abandoned his cell phone. He also argues that the warrantless search of his cell phone violated the Fourth Amendment based on the holding in <u>Riley v. California</u>, 573 U.S. 373 (2014).

"On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth." <u>Jones v. Commonwealth</u>, 71 Va. App. 375, 380 (2019) (quoting <u>Carlson v. Commonwealth</u>, 69 Va. App. 749, 757 (2019)). When challenging the denial of a motion to suppress evidence, appellant bears the burden of establishing that reversible error occurred. <u>Glenn v. Commonwealth</u>, 275 Va. 123, 130 (2008). The issue of whether "evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." <u>McCain v. Commonwealth</u>, 275 Va. 546, 551 (2008). "In making such a determination, we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." <u>Id.</u> at 552.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

- 4 -

"It is well-established that under the Fourth Amendment, '[s]earches and seizures conducted without a warrant are presumptively invalid.'" Merid v. Commonwealth, 72 Va. App. 104, 112 (2020) (alteration in original) (quoting Cantrell v. Commonwealth, 65 Va. App. 53, 59 (2015)). However, "the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action."[2] Stickle v. Commonwealth, 68 Va. App. 321, 332 (2017) (quoting Smith v. Maryland, 442 U.S. 735, 740 (1979)).

"One who voluntarily abandons property forfeits any expectation of privacy he or she may have in it." Commonwealth v. Holloway, 9 Va. App. 11, 18 (1989). As such, "the right afforded to persons by the Fourth Amendment—to be secure against unreasonable searches and seizures of 'their' persons and property—does not extend to abandoned premises or property." Hawley v. Commonwealth, 206 Va. 479, 482 (1965). "Abandonment of property by a person under Fourth Amendment analysis 'is different from the property law concept of abandonment. A person may retain a property interest in personal property while, at the same time, relinquishing his or her reasonable expectation of privacy in that property.'" Knight v. Commonwealth, 61 Va. App. 297, 308 (2012) (quoting Holloway, 9 Va. App. at 18). "A person's intent to retain a reasonable expectation of privacy [governs] whether the property has

---

[2] "In a Fourth Amendment context, protection is afforded 'if, first, a person has exhibited an actual, subjective expectation of privacy in the subject area and, second, if that expectation is one that society is prepared to recognize as "reasonable."'" Belmer v. Commonwealth, 36 Va. App. 448, 455-56 (2001) (quoting Wellford v. Commonwealth, 227 Va. 297, 301 (1984)). "Although the individual whose property was searched bears the burden of proving a legitimate expectation of privacy in the item searched, the burden of proving abandonment is on the government." Al-Karrien v. Commonwealth, 38 Va. App. 35, 43 (2002). On appeal, the Commonwealth does not assert that appellant lacked a subjective or reasonable expectation of privacy in the "settings" area of his cell phone where the IME and cell phone numbers were stored. Therefore, we assume without deciding that appellant met his burden in establishing that he had both a subjective and reasonable expectation of privacy in those numbers, and decide only whether the Commonwealth met its burden in proving that appellant abandoned the phone.

been abandoned . . . [and] is to be determined by objective standards. Such an intent may be inferred from words, acts[,] and other objective facts." Id. (alterations in original) (quoting Watts v. Commonwealth, 57 Va. App. 217, 228 (2010)). "The determination of this intent must be made after consideration of all relevant circumstances, but two factors are particularly important: denial of ownership and physical relinquishment of the property." Holloway, 9 Va. App. at 18.

"A finding of an abandonment by the trial court is a determination which, 'even when arguably mixed with questions of law, is subject to attack only if clearly erroneous.'" Wechsler v. Commonwealth, 20 Va. App. 162, 173 (1995) (quoting Holloway, 9 Va. App. at 19).

Appellant argues that the evidence did not demonstrate that he abandoned his cell phone, as he never denied ownership of the cell phone or otherwise said anything to suggest that he disavowed ownership of it. To the contrary, appellant contends, he was prevented from retrieving the cell phone that he sought to recover from inside the restaurant.

We reject appellant's argument and conclude that credible evidence supports the trial court's determination that he abandoned his cell phone. In the instant case, after leaving a restaurant as it was closing, appellant told a waitress in a hostile manner to retrieve his cell phone. After attempting to retrieve it through hostile demands, he decided to flee the area after firing his weapon at a security guard, leaving his cell phone behind at the restaurant. See United States v. Most, 876 F.2d 191, 196 (D.C. Cir. 1989) ("Abandonment may be demonstrated, for example, when a suspect leaves an object unattended in a public place."). Appellant did not return to the restaurant that night to retrieve the cell phone, even though he knew where it was located. He also began using a new cell phone after the incident. Here, while appellant did not deny ownership of the cell phone, he did relinquish physical control of it and did not attempt to

retrieve it. In total, the evidence establishes appellant's intent to abandon the cell phone and thus surrender any privacy interest he may have had in it or in its contents.

Despite this evidentiary record and the trial court's factual finding regarding abandonment, appellant argues that we are compelled to conclude that the trial court erred in denying his motion to suppress based on the United States Supreme Court's ruling in Riley, 573 U.S. 373. In Riley, the Supreme Court held that a specific exception to the warrant requirement, the search incident to arrest exception, does not apply to cell phones. Id. at 403. In its decision, the Supreme Court detailed the manner in which "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person," and thus reasoned that individuals have a heightened privacy interest in a cell phone due to the vast amount and type of data that may be stored on such devices. Id. at 393-97. The Court also noted that the government's interest in searching an arrestee's cell phone during an arrest was limited because such searches do not meaningfully advance the search incident to arrest exception's dual purposes of protecting officers and preventing the destruction of evidence. Id. at 386, 388-91. Thus, the balance of interests did not support applying the search incident to arrest exception to cell phones, and therefore "a warrant is generally required before" searching information on a cell phone, "even when a cell phone is seized incident to arrest." Id. at 386, 401.

Here, appellant argues that, under Riley, because his cell phone was searched without police first having obtained a warrant, the evidence found on it should have been suppressed. However, while Riley held that "the search incident to arrest exception does not apply to cell phones," it emphasized that "other case-specific exceptions may still justify a warrantless search of a particular phone." Id. at 401-02. While the Supreme Court in Riley noted the expansive privacy interests at stake when police search a cell phone, this heightened privacy concern is not at issue when a suspect abandons a cell phone—that abandonment has demonstrated the

suspect's relinquishment of any privacy interest at all in the contents of the phone.  Nothing in Riley forecloses a court's ability to consider whether a cell phone searched without a warrant has been abandoned; thus, that decision does not alter the standard analysis of determining whether an accused has relinquished his or her privacy interest in property, including a cell phone, by abandoning an item.  See United States v. Small, 944 F.3d 490, 503 n.2 (4th Cir. 2019) (concluding that Riley did not prohibit the finding that the abandonment of a cell phone justified the warrantless search of the phone); see also United States v. Crumble, 878 F.3d 656, 660 (8th Cir. 2018) (noting that "Riley's holding is limited to cell phones seized incident to arrest" and holding that the abandonment of a cell phone justified the warrantless search of that phone). Therefore, contrary to appellant's argument, the trial court did not err in determining that the warrantless search of his cell phone did not violate the Fourth Amendment, despite the heightened privacy interests regarding cell phones discussed in Riley.

We conclude that Riley does not prevent courts from considering whether cell phones have been abandoned for Fourth Amendment purposes.  Further, in the instant case, the evidence supported the trial court's determination that appellant abandoned his cell phone.  Thus, the search of the phone violated no protected Fourth Amendment right.

## III.  CONCLUSION

We hold that the trial court did not err in denying appellant's motion to suppress the evidence obtained from the search of his cell phone.  Accordingly, we affirm.

Affirmed.