COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, AtLee and Chaney
Argued at Norfolk, Virginia


SANDOR SANTIAGO GALVANTE

                                                MEMORANDUM OPINION[*] BY
v.          Record No. 0866-21-1                JUDGE VERNIDA R. CHANEY
                                                SEPTEMBER 27, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Leslie L. Lilley, Judge

Thomas H. Sheppard, II (Sheppard & O'Brien, P.C., on brief), for
appellant.

Craig W. Stallard, Senior Assistant Attorney General (Mark R.
Herring,[1] Attorney General, on brief), for appellee.


Sandor Santiago Galvante ("Galvante") entered conditional guilty pleas in the Circuit Court

of the City of Virginia Beach ("circuit court"), and he now appeals the circuit court's denial of his

motion to suppress evidence.[2]  Galvante contends that the circuit court erred in finding that the

police had reasonable suspicion to stop his vehicle.  For the following reasons, this Court affirms the

circuit court's judgment.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

[2] Pursuant to Code § 19.2-254, Galvante's entry of conditional guilty pleas reserved his
right to appellate review of the circuit court's adverse determination of his suppression motion.
Based on his conditional guilty pleas, Galvante was convicted of felony driving while intoxicated
(DWI) after a prior felony DWI, in violation of Code §§ 18.2-266 and 18.2-270, felony driving
after license revocation for DWI, in violation of Code § 46.2-391(D)(2)(a)(ii), and felony driving
while a habitual offender after DWI, in violation of former Code § 46.2-357 (repealed by 2021
Va. Acts Spec. Sess. I, ch. 463).  Galvante also appeals the revocation of two prior suspended
sentences based on these new convictions.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party" in the circuit court. *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). This Court "regard[s] as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.* (citing *Gerald*, 295 Va. at 473).

On February 22, 2019, around midnight, Officers Kristen Contreras and Jonathan Cheng were on patrol on Pacific Avenue in Virginia Beach when an unidentified man drove up to the passenger side of their marked police vehicle, flashed his car lights, and honked his horn to get the officers' attention. When the officers faced the unidentified man, he spoke with "a sense of exigence" and said, "There is a man coming out of Doc Taylor's and getting into his car. He is intoxicated. I tried to get him an Uber. He wouldn't listen. He's getting into his car right now. . . . You need to check on him." Then the unidentified informant pointed at Galvante and drove off. The officers did not notice the informant's license plate number. Neither officer knew the unidentified informant. Subsequently, Officer Cheng saw the informant return and drive off again, but the officers obtained no additional information about the informant.

When the informant pointed at Galvante, he was getting into his car on 23rd Street near the intersection with Pacific Avenue. The restaurant-bar Doc Taylor's was nearby on the other side of 23rd Street, across Pacific Avenue. Officer Contreras turned onto 23rd Street as Galvante began to pull out of his parking space. Officer Contreras drove past Galvante's car and stopped on the other side of the street without activating any lights or emergency equipment. Officer Contreras angled the police vehicle towards the center of the street, about a car's length from Galvante's car. Then Officer Contreras walked toward the driver's side of Galvante's running car while Officer Cheng

approached the passenger's side. Both officers were wearing police uniforms, badges, and holstered firearms.

Officer Contreras made eye contact with Galvante as she approached his car, and Galvante opened his car door. As Officer Contreras introduced herself, she detected an odor of alcohol coming from inside Galvante's car. Officer Contreras grabbed the top of the car door to prevent Galvante from closing the door and driving off. Then Officer Contreras smelled a very strong odor of alcohol and noticed that Galvante's eyes were bloodshot and watery.

At the conclusion of the suppression hearing, the circuit court made the following findings:

- A citizen stopped next to the police vehicle and flashed his car lights with great urgency.

- The citizen pointed to a man who was getting in a nearby parked car and informed the officers that the man had been drinking at Doc Taylor's and should not be driving.

- The citizen told the officers that he had tried to get the man an Uber because he should not be driving.

- The citizen tipster was "face-to-face" with the officers.

- Doc Taylor's and the man's parked car were both on 23rd Street, on opposite sides of Pacific Avenue.

- Doc Taylor's was visible from the location of the man's parked car.

- Doc Taylor's and the man who reportedly had been drinking there were both within sight of the officers.

- The officers pulled up next to Galvante's car but did not block his exit.

- The officers had reasonable suspicion to investigate the tip.

- Both officers got out of the police vehicle and Officer Contreras held her hands up, indicating they wanted to talk to Galvante.

- Officer Cheng tried to engage Galvante in a consensual encounter by informing him that they had received a citizen complaint that he may have had too much to drink.

- Around the same time Officer Cheng was initiating a consensual encounter with Galvante, Officer Contreras smelled alcohol and urgently put her hand on the car because she didn't want Galvante to leave.

- There was reasonable suspicion justifying the officers' conduct.

Based on these findings, the circuit court denied Galvante's motion to suppress. This appeal followed.

ANALYSIS

Galvante argues on appeal that the circuit court erred in denying his suppression motion because the officers stopped his vehicle without reasonable suspicion, in violation of his Fourth Amendment right against unreasonable seizures. *See Harris v. Commonwealth*, 276 Va. 689, 694 (2008) ("[P]ursuant to the 'the fruit of the poisonous tree' doctrine, evidence seized as a result of an illegal stop is inadmissible against the defendant at trial." (citing *Jackson v. Commonwealth*, 267 Va. 666, 672 (2004); *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963))).

On appeal of the denial of a motion to suppress evidence, this Court "determine[s] whether the accused has met his burden to show that the trial court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error." *Merid v. Commonwealth*, 72 Va. App. 104, 108 (2020) (quoting *Cantrell v. Commonwealth*, 65 Va. App. 53, 56 (2015)), *aff'd*, 300 Va. 77 (2021), *cert. denied sub nom. Merid v. Virginia*, 142 S. Ct. 1137 (2022). Galvante's "claim that [he] was seized in violation of the Fourth Amendment presents a mixed question of law and fact . . . ." *Id.* at 108-09 (quoting *King v. Commonwealth*, 49 Va. App. 717, 721 (2007)). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 109 (quoting *Cantrell*, 65 Va. App. at 56). "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an

- 4 -

area protected by the Fourth Amendment." *Id.* (quoting *Cantrell*, 65 Va. App. at 56); *see also Moreno v. Commonwealth*, 73 Va. App. 267, 274 (2021) ("[W]e 'review[ ] *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment.'" (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020))).

Galvante contends that the officers unconstitutionally seized him without reasonable suspicion when they stopped his car based on an uncorroborated report by an anonymous informant. An investigative vehicle stop constitutes a seizure under the Fourth Amendment, *see Delaware v. Prouse*, 440 U.S. 648, 653 (1979), and "must be justified by a reasonable suspicion, based upon specific and articulable facts, that criminal activity is 'afoot,'" *Harris*, 276 Va. at 694 (citations omitted). "Whether an officer has reasonable suspicion for a[n] [investigative vehicle] stop is based on an assessment of the totality of the circumstances, which includes '"the content of information possessed by police and its degree of reliability."'" *Id.* at 695 (quoting *Jackson*, 267 Va. at 673). Absent information demonstrating the informant's credibility and basis of knowledge, an anonymous tip "cannot, of itself, establish the requisite quantum of suspicion for an investigative stop." *Id.* at 696.

Although the citizen informant here made a face-to-face report to the officers, Galvante argues that this informant was more anonymous than a 911 caller because he provided no identifying or contact information, whereas the 911 system "has some features that allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity." *Navarette v. California*, 572 U.S. 393, 400 (2014). Galvante claims that the unknown informant was unreliable because he did not subject himself to possible arrest if the information he provided proved false. *See Harris*, 276 Va. at 696 (finding the anonymous tipster unreliable where the tipster was unknown to police and did not subject himself to possible arrest if the information he provided to the police dispatcher proved false). Galvante argues that

because the officers had no information corroborating the informant's unreliable tip before they stopped Galvante, the stop was not justified by reasonable suspicion that Galvante was engaged in the criminal activity of driving while intoxicated.

Assuming, without deciding, that Galvante was seized by the officers, we disagree with Galvante's contention that the informant's tip lacked indicia of reliability as an anonymous tip. Although the informant was unknown to the officers, the informant presented himself to the officers in a face-to-face encounter with no assurance that the police would not use his license plate number to find him if the information he provided proved false. Although the informant did not provide his identifying information to the officers, he made it possible for the officers to recognize him by personally appearing before them.

Moreover, because the informant communicated the tip in person, the officers were able to observe his manner and demeanor to assess his credibility. *See Giles v. Commonwealth*, 32 Va. App. 519, 524 (2000). In *Giles*, a police officer seized the defendant based on the reports of two women who approached the officer and

> told him that they had just heard a man say that he had a gun and was "looking to hurt someone" and that they then saw him get into his car. The women identified the car, which was then exiting a restaurant parking lot across the street. Giles was the driver and only occupant.

*Id.* at 522. Although the officer in *Giles* did not obtain the informants' names and addresses, this Court held that their report was not an anonymous tip and did suffice to provide reasonable, articulable suspicion justifying the officer's seizure of the defendant. *Id.* at 523-24. *Cf. Florida v. J.L.*, 529 U.S. 266, 268 (2000) (holding that an anonymous tip, without more, is insufficient to support the reasonable, articulable suspicion required for a lawful investigative seizure). In contrast to an anonymous tip, the face-to-face tips in *Giles* and here enabled the officers to assess the informants' credibility and the reliability of the reported information.

Like the informants in *Giles*, the informant here cogently presented his report, based his report on his personal observation, exhibited a sense of urgency, and specifically identified the suspect and his car. Here, the officers perceived that the informant was acting with a genuine sense of urgency when he alerted them that an intoxicated man on the nearby street corner was about to enter his car and drive away. According to the informant, he personally interacted with Galvante and offered to get him a ride to prevent him from driving. Therefore, the officers could have reasonably inferred that the informant's claim that Galvante was intoxicated was based on the informant's personal observation of Galvante. The proximity of the bar that Galvante was reportedly coming from also bolstered the credibility of the informant's tip. The fact that the informant was making a contemporaneous tip as Galvante was entering his car is another indicia of the tip's reliability. *See Navarette*, 572 U.S. at 399-400 (noting that the law has long treated contemporaneous reports as especially reliable and trustworthy).

This Court concludes that considering the totality of the circumstances, the informant's tip in the face-to-face encounter with police provided the officers with reasonable suspicion to stop and investigate Galvante for suspected driving while intoxicated. *See United States v. Christmas*, 222 F.3d 141, 144 (4th Cir. 2000) (holding that a tip from a face-to-face encounter with an informant close in time and distance from the alleged illegal activity was sufficient to create a reasonable suspicion to conduct an investigatory stop). Therefore, the investigative seizure of Galvante did not violate his Fourth Amendment rights.

CONCLUSION

The officers had reasonable suspicion to stop Galvante's vehicle to investigate Galvante for suspected driving while intoxicated. Therefore, the circuit court did not err in denying Galvante's motion to suppress. Accordingly, this Court affirms the circuit court's judgment.

*Affirmed.*