COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Huff and Chaney
Argued at Norfolk, Virginia


DEQUAN O'NEAL BEAMON

MEMORANDUM OPINION[*] BY
v.      Record No. 1136-22-1          JUDGE VERNIDA R. CHANEY
                                      JANUARY 9, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

Charles E. Haden for appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General), for appellee.


Following a combined suppression hearing and bench trial, Dequan O'Neal Beamon appeals

four felony convictions: (i) possession with intent to distribute marijuana, in violation of Code

§ 18.2-248.1; (ii) possession of a firearm while in possession with intent to distribute more than one

pound of marijuana, in violation of Code § 18.2-308.4; (iii) possession of a firearm as a convicted

violent felon, in violation of Code § 18.2-308.2; and (iv) possession of a concealed weapon, second

offense, in violation of Code § 18.2-308. Beamon contends that the trial court erred in (1) denying

his motion to suppress the evidence obtained during a warrantless search of his car and (2) denying

his motion to strike the four felony charges due to insufficient evidence. For the following reasons,

this Court affirms Beamon's convictions.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

On February 24, 2021, Officer Bruner of the Hampton Police Division stopped Beamon's car for speeding, failing to stop at a stop sign, and reckless driving. When Beamon failed to stop immediately, driving past multiple spots where he could have stopped safely, Officer Bruner suspected that the car's occupants may have been trying to conceal something.

After Beamon stopped his car, Officer Bruner saw that Beamon was the only occupant. Officer Bruner observed that Beamon appeared to be "very tense" and "extremely nervous." After Officer Bruner asked Beamon for his driver's license and vehicle registration, the officer determined that the car belonged to Beamon's girlfriend, K.B.

Officer Bruner was accompanied by his trainee, Officer Smith. They were soon joined by a back-up officer, Officer Brown, and his drug-sniffing dog. The drug dog was trained to detect marijuana and other drugs. Officer Bruner asked Officer Brown "to conduct a vehicle scan" of Beamon's car with the drug dog. Officer Bruner directed Officer Smith to write the summonses while he stood guard on the driver's side of Beamon's car.

After Officer Brown walked the drug dog around Beamon's car, he observed the dog's "positive alert" on the car. Officer Brown testified that the dog was not able to differentiate between marijuana and any other drugs, and the presence of any amount of marijuana could have caused the dog to alert. After the drug dog gave a positive alert, Officer Bruner directed Beamon to exit his car so the police could search it.

As Beamon stepped out of his car, Officer Bruner noticed in the driver's seat a bag with a small amount of green plant-like material, consistent with marijuana. Officer Bruner testified that

- 2 -

this bag and its contents were not visible until Beamon exited his car. Officer Bruner considered it unusual that "[i]t was a very large bag . . . for a very small of amount marijuana." Officer Bruner suspected that the bag previously contained more marijuana. When Officer Bruner pointed at the bag, Beamon responded, "I forgot all about that." Officer Bruner testified that based on his training and experience, the small amount of suspected marijuana could be consistent with personal use of marijuana. Officer Bruner further testified that when he observed the suspected marijuana, he was aware that under the new Virginia law at that time, possession of a small amount of marijuana was punishable by only a civil penalty. Officer Brown testified that the drug dog would have alerted to the small amount of marijuana that was found on the driver's seat.

Officer Bruner detained Beamon in handcuffs while the police searched his car. During the search, the police found a handgun under the driver's seat. The gun was centered under the seat with the handle of the gun facing the front of the driver's seat. The police did not test the gun for fingerprints. The police also found two cell phones in the car, but they could not retrieve any data from the phones.

The handgun from the car was analyzed at the Virginia Department of Forensic Science (DFS). When the trigger of the gun was tested for DNA, the DNA of multiple persons was found. Beamon could not be eliminated as a major contributor to the DNA mixture profile. Anne Pollard, a forensic scientist from DFS, determined that "the probability of randomly selecting an unrelated individual with a DNA profile matching the major profile is one in greater than 7.2 billion[,] which is approximately the world population in the Caucasian, African-American and Hispanic population." Considering the quantity of DNA found on the gun and the "quality of the profile" that was developed, Pollard concluded that the DNA found on the gun was not consistent with a secondary transfer of DNA.

In searching a backpack found in a child's booster seat in the backseat of the car, the police found two vacuum-sealed bags containing marijuana; several black resealable ziplock bags containing various amounts of marijuana with medical cannabis stickers; and $1,000 in rolled-up twenty-dollar bills. The backpack contained no identification or any other documents.

After finding the evidence in the backpack, Officer Bruner arrested Beamon for possession with intent to distribute marijuana. In searching Beamon incident to his arrest, the police found $2,100 in twenty-dollar bills in his right jacket pocket and $559, including 27 twenty-dollar bills, in his left jacket pocket. When Beamon was taken before the magistrate, he stated under oath that he did not have a job and the only financial assistance he received was from family members on occasion.

Detective Figueroa, an expert in the distribution of marijuana, testified at trial that the large quantity of marijuana found in Beamon's car—40 ounces—was inconsistent with personal use. According to Detective Figueroa, an amount of marijuana up to 4 ounces is consistent with personal use. On cross-examination, Detective Figueroa testified that the small amount of marijuana found in the driver's seat was consistent with personal use and subject to only a civil penalty. However, he estimated that the additional marijuana recovered from the backseat was worth $6,000 in profit and inconsistent with personal use. The detective further testified that people carrying the amount of marijuana and currency recovered from Beamon's car typically carry a firearm because they are afraid of being robbed.

Following Officer Brown's testimony at the combined suppression hearing and bench trial, the trial court heard arguments on Beamon's motion to suppress. The trial court denied the motion, and the trial resumed.

In addition to the Commonwealth's witnesses' testimony, the trial court admitted into evidence (i) a DFS certificate of DNA analysis recording Pollard's findings; (ii) a certified order

recording Beamon's 2012 convictions for possession of a firearm as a convicted felon and possession of a concealed weapon; and (iii) a certified copy of a final adjudicatory/disposition order showing that Beamon was found guilty of malicious wounding in 2008.

After the Commonwealth rested its case-in-chief, Beamon moved to strike the evidence on all four charges. Beamon argued that the car was owned by a third party and the gun was hidden under the driver's seat, and Beamon didn't do or say anything to support an inference that he knew the gun was there. Beamon did not dispute that his DNA was found on the trigger of the gun, but he asserted that the presence of his DNA was explained by secondary DNA transfer.

Beamon argued that the evidence did not support a finding that he possessed the marijuana in the backseat of the car because the marijuana was not in plain view and there was no evidence that it emitted any noticeable odor. Thus, Beamon contended that one cannot infer from the large quantity of marijuana that he must have known it was there. Beamon further argued that he didn't do or say anything to support an inference that he possessed the marijuana in the backpack. Finally, Beamon argued that there was nothing in the backpack that linked the contents of the backpack to him.

Taking the evidence in the light most favorable to the Commonwealth, the trial court overruled Beamon's motion to strike. Beamon presented no evidence. Following closing arguments, the trial court denied Beamon's renewed motion to strike and found him guilty as charged of all four charges.

Following a sentencing hearing, the trial court sentenced Beamon to a mandatory minimum five-year sentence of active incarceration for each felony firearm offense. On the felony convictions for marijuana possession with the intent to distribute and possession of a concealed weapon, the court sentenced Beamon to incarceration for five years with all five years suspended. This appeal followed.

ANALYSIS

I. The trial court did not err in denying Beamon's motion to suppress.

Beamon contends that the trial court erred in refusing to suppress the evidence that police found in his car during a warrantless search. Beamon argues that the warrantless search was without probable cause, in violation of his Fourth Amendment rights against unreasonable seizures. On appeal of a trial court's order denying a motion to suppress evidence, this Court "determine[s] whether the accused has met his burden to show that the circuit court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error." *Merid v. Commonwealth*, 72 Va. App. 104, 108 (2020) (quoting *Cantrell v. Commonwealth*, 65 Va. App. 53, 56 (2015)), *aff'd*, 300 Va. 77 (2021). Beamon's "claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact . . . ." *Id.* at 108-09 (quoting *King v. Commonwealth*, 49 Va. App. 717, 721 (2007)). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 109 (quoting *Cantrell*, 65 Va. App. at 56). "However, the Court reviews *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment." *Moreno v. Commonwealth*, 73 Va. App. 267, 274 (2021) (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020)).

A warrantless search of an automobile detained in a traffic stop is permissible under the Fourth Amendment when the police have probable cause to search the vehicle. *See Curley v. Commonwealth*, 295 Va. 616, 621 (2018) (citing cases). Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 622 (quoting *Jones v. Commonwealth*, 277 Va. 171, 178 (2009)). This Court determines de novo whether the police had probable cause to search Beamon's car, while deferring to the trial court's

- 6 -

factual findings. *See id.* at 621. To determine whether the totality of the relevant facts and circumstances amounts to probable cause, we consider the facts and circumstances "from the standpoint of an objectively reasonable police officer." *Id.* at 622 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018)).

At issue in this appeal is whether the drug dog's alert to Beamon's car gave the police probable cause to believe that the car contained *contraband* drugs. If so, the warrantless search of Beamon's car would have been permissible under the Fourth Amendment.[1] *See id.* The drug dog's alert to Beamon's car gave the police probable cause to believe that the car contained illegal narcotics or marijuana. *See Jones*, 277 Va. at 180. However, when the drug dog alerted on Beamon's car in February 2021, the General Assembly had recently decriminalized simple possession of marijuana by amending former Code § 18.2-250.1, converting simple marijuana possession from a criminal misdemeanor to a civil offense subject to a civil penalty.[2] *See* 2020 Va. Acts ch. 1285. When the police searched Beamon's car in February 2021, former Code § 18.2-250.1 provided, in part, that "[i]t is *unlawful* for any person knowingly or intentionally to possess marijuana" and "[a]ny person who violates this section is subject to a civil penalty of no more than $25. A violation of this section is a civil offense." 2020 Va. Acts ch. 1285 (emphasis

---

[1] Virginia police are now prohibited by statute from conducting searches based on the odor of marijuana. Code § 4.1-1302(A), which became effective on July 1, 2021, provides:

> No law-enforcement officer . . . may lawfully stop, search, or seize any person, place, or thing and no search warrant may be issued solely on the basis of the odor of marijuana[,] and no evidence discovered or obtained pursuant to a violation of this subsection . . . shall be admissible in any trial, hearing, or other proceeding.

*See* 2021 Va. Acts Spec. Sess. I, chs. 550-51, cls. 1, 8.

[2] Effective July 1, 2021, the General Assembly repealed former Code § 18.2-250.1. *See* 2021 Va. Acts Spec. Sess. I, chs. 550-51, cl. 3.

added). Thus, when the police searched Beamon's car in response to the drug dog's alert, simple possession of marijuana was *unlawful*, albeit not criminal.

If, for purposes of the Fourth Amendment, *contraband* refers to anything unlawfully possessed, then the drug dog's alert to Beamon's car—whether to marijuana or another unlawfully possessed drug—would have provided probable cause to search Beamon's car for contraband. *See Black's Law Dictionary* (11th ed. 2019) (defining *contraband* as "[g]oods that are unlawful to import, export, produce, or possess"). On the other hand, if, for purposes of the Fourth Amendment, *contraband* refers only to *criminally* possessed things, then the drug dog's alert would *not* have provided probable cause to search Beamon's car for contraband. *See Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 306-07 (1967) (with respect to "[t]he requirements of the Fourth Amendment," *contraband* "automatically provide[s]" the required nexus "between the item to be seized and criminal behavior").

If probable cause to search a vehicle for contraband can exist only if there is a nexus between the object of the search and criminal conduct, then a drug dog's alert to marijuana in a vehicle would not provide probable cause to search the vehicle for contraband. But even if a probable cause search for contraband requires a nexus between the purported contraband and criminal activity, it would not necessarily follow that the trial court erred in denying Beamon's suppression motion. Under circumstances where, as here, the applicable laws or legal standards had recently changed, it is appropriate to consider whether a reasonably well-trained officer would have known and understood the constitutional implications of those changes. The exclusionary rule is applicable only where "'a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'" *Collins v. Commonwealth*, 297 Va. 207, 215 (2019) (quoting *Herring v. United States*, 555 U.S. 135, 145 (2009)). The exclusionary rule does not

apply where, "at the time of the search, a reasonably well-trained officer would not have known that the search . . . was unconstitutional." *Id.* at 212.

Assuming without deciding that (i) a probable cause search for contraband requires a nexus between the purported contraband and criminal conduct and (ii) the totality of the circumstances—including the drug dog's alert to Beamon's car—did not amount to probable cause to search the car for contraband or evidence of criminal activity, this Court concludes that the exclusionary rule is inapplicable here. At the time of the search, the caselaw and relevant statutes did not provide unambiguous guidance about whether an *unlawfully* but *not criminally* possessed substance constituted contraband for purposes of the Fourth Amendment. Thus, we cannot find that a reasonably well-trained officer would have known that it was unconstitutional to search Beamon's car based on probable cause to believe that it contained *unlawfully* but *not criminally* possessed marijuana. Therefore, the trial court did not err in denying Beamon's motion to suppress the evidence from the warrantless vehicle search.

## II. The trial court did not err in denying Beamon's motion to strike.

Beamon contends that the trial court should have granted his motion to strike because the evidence was insufficient to prove all of the elements of the charged offenses. When an appellant challenges the sufficiency of the evidence to support a criminal conviction, this Court "reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party at trial, and considers all inferences fairly deducible from that evidence." *Commonwealth v. Herring*, 288 Va. 59, 66 (2014) (quoting *Allen v. Commonwealth*, 287 Va. 68, 72 (2014)). At issue on appeal is "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cady*, 300 Va. at 329 (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). The trial court's judgment will be affirmed "unless it is plainly wrong or without

evidence to support it." *Sarka v. Commonwealth*, 73 Va. App. 56, 62 (2021); *see also* Code § 8.01-680.

### A. Sufficient Evidence of Marijuana Possession

Beamon suggests that the evidence is insufficient to sustain the two convictions that require proof of marijuana possession because the evidence fails to establish that he was aware of the presence and character of the marijuana.

> To support a conviction based upon constructive possession, the Commonwealth "must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control."

*Coward v. Commonwealth*, 48 Va. App. 653, 657 (2006) (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)). Although proximity to drugs may be considered in determining whether a defendant possessed the drugs, proximity "is insufficient alone to establish possession." *Id.* Similarly, the fact-finder may consider a defendant's occupancy of the vehicle in conjunction with the other evidence in determining whether a defendant constructively possessed the drugs found in the vehicle, but "occupancy alone is insufficient to prove knowing possession of drugs located . . . in a vehicle." *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992). *Sole* occupancy of a vehicle, however, is highly probative of constructive possession of its contents. *See Ervin v. Commonwealth*, 57 Va. App. 495, 512 (2011) (en banc).

Considering the totality of the evidence in the light most favorable to the Commonwealth, this Court concludes that a rational fact-finder could find from the evidence that Beamon constructively possessed the marijuana found in the car. First, Beamon was the sole occupant of the car. Second, Beamon demonstrated his awareness of the marijuana on the driver's seat when he told Officer Bruner, "I forgot about that." Third, a rational fact-finder could find from the evidence that the bag containing the marijuana on the driver's seat was unusually large for the small amount

of marijuana inside it. As the trial court noted, the bag was large enough to contain an amount of marijuana inconsistent with personal use. Fourth, Beamon told the magistrate that he was unemployed and without substantial financial assistance, yet he had over $2,600 cash in his jacket pockets. A rational fact-finder could find that the presence of an amount of marijuana in the car inconsistent with personal use provides an explanation for the source of Beamon's cash. Fifth, the $1,000 in cash found in the backpack was a roll of twenty-dollar bills and the $2,659 in cash in Beamon's pockets was also mostly twenty-dollar bills, supporting an inference that Beamon possessed the backpack where the large quantity of marijuana was found. Finally, a rational fact-finder could find that Beamon exhibited signs of guilty knowledge with his "extremely nervous" and "very tense" demeanor during his encounter with Officer Bruner. Because the totality of the evidence supports the trial court's finding that Beamon possessed the marijuana found in the backpack, the trial court did not err in denying Beamon's motion to strike the charges involving marijuana possession.

### B. Sufficient Evidence of Intent to Distribute Marijuana

Beamon suggests that the evidence is insufficient to sustain the two convictions involving possession of marijuana with the intent to distribute because the evidence is insufficient to prove that he had the requisite intent. But Beamon acknowledges that (1) "[p]ossession of a large sum of money, especially in small denominations, is regularly recognized as a factor indicating an intent to distribute" and (2) the quantity of drugs possessed is a "circumstance relevant to proof of intent to distribute." Op. Br. 30. The evidence of Beamon's actual possession of $2,659 cash in mostly twenty-dollar bills and his constructive possession of $1,000 cash in mostly twenty-dollar bills—in conjunction with the large amount of marijuana inconsistent with personal use—supports an inference that Beamon intended to distribute the marijuana.

*C.  Sufficient Evidence of Firearm Possession*

Beamon argues that the trial court erred in denying his motion to strike the three convictions involving firearm or weapon possession because the evidence was insufficient to prove his actual or constructive possession of the firearm that was found under the driver's seat of the car.  Beamon contends that "there was no evidence that [he] was aware of the firearm under the driver's seat in his girlfriend's car, or that he exercised dominion and control over the firearm."  Op. Br. 33.  This Court concludes that the undisputed evidence of Beamon's DNA on the trigger of the firearm supports a reasonable inference that Beamon exercised dominion and control over the firearm and knew that it was hidden under the driver's seat.  Beamon repeats on appeal the assertion he made in the trial court that the DNA evidence is explained by secondary transfer of the DNA.  But the only evidence regarding DNA transfer was from Anne Pollard, the Commonwealth's expert witness from DFS.  Pollard testified that DNA transfers are typically associated with "low levels of DNA" and she would not expect DNA transfer to be involved in this case given the quantity of DNA that was present.  Because the evidence supports the trial court's finding that Beamon possessed the firearm, the trial court did not err in denying Beamon's motion to strike the charges involving possession of a firearm or weapon.

## CONCLUSION

For the foregoing reasons, this Court affirms the trial court's judgment.

*Affirmed.*